[Civ. No. 2395.    First Appellate District.—May 8, 1918.]

E. L. ANDERSON, Appellant, v. NEAL INSTITUTES COMPANY (a Corporation), et al., Respondents.

SPECIFIC PERFORMANCE—CONTRACT IMPOSSIBLE TO ENFORCE.—When the enforcement of a contract by decree of court is difficult or practically impossible, specific performance will not be granted.

INJUNCTION—BREACH OF CONTRACT—AFFIRMATIVE AND NEGATIVE COVENANTS IMPOSSIBLE OF ENFORCEMENT.—In view of subdivision 5 of section 526 of the Code of Civil Procedure, providing an injunction cannot be granted to prevent the breach of a contract the performance of which could not be specifically enforced, a contract containing affirmative and negative covenants impossible of enforcement will not support a suit for an injunction to restrain breach.

ID.—CONTRACT TO PREPARE AND FURNISH MEDICINES—EXCLUSIVE RIGHT TO USE—PREVENTION OF BREACH.—An injunction will not lie to prevent the breach of a contract requiring a medical institute company to prepare and furnish medicines and advertising literature and to give plaintiff the exclusive right to use the remedies.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Walter Perry Johnson, and James D. Thurman, for Appellant.

David A. Nelson, for Respondents.

KERRIGAN, J.—This is an appeal by plaintiff from a judgment entered in favor of defendants upon an order sustaining a general demurrer to plaintiff's amended and supplemental complaint without leave to amend.

The facts as alleged in the complaint, stripped of legal verbiage, are substantially as follows: The defendant, Neal Institutes Company, has been for several years continuously engaged in the business of preparing and distributing certain medical remedies, known as the Neal remedies, for the treatment of patients addicted to the excessive use of alcoholic liquors and pernicious drugs; and it maintains, either directly or through persons acting by its license and permission, institutes in various cities of the United States for the purpose of treating patients according to its system of treatment and by the use of its remedies. By a written contract, made in March, 1910, between the plaintiff and the Neal Institutes Company, the latter granted to plaintiff for a term of ninety-nine years the exclusive right to advertise and use the Neal remedies and the Neal method of treatment in the northern half of the state of California, and to use the name "Neal" in connection with such institutes as might be established by plaintiff in his territory. The company further agreed to supply to plaintiff on his order such of the company's medicines and advertising literature as he might require.

Pursuant to the contract the plaintiff, in May, 1910, established an institute in San Francisco at No. 1409 Sutter Street under the name of the Neal Institute, sometimes followed in advertisements by the descriptive term "of San Francisco." This institute has been continuously maintained by plaintiff and plaintiff's patients there treated with the Neal remedies supplied by the Neal Institutes Company; and by extensive advertising and by the personal care and attention of plaintiff throughout a period of about five and a half years prior to the commencement of the action plaintiff built up a valuable business for his institute, and it acquired a highly valuable goodwill. In the month of November, 1913, the Neal Institutes Company, acting in confederation with the other defendants, established, and has since continuously maintained, a rival institute in San Francisco at No. 1550 Fell Street under the name of the Neal Institute of San Francisco. Since this last-named institute was established the Neal Institutes Company has refused to furnish any of its remedies to the plaintiff,

but has been furnishing them to the rival institute, and the defendants have there treated patients according to the Neal system and by use of the Neal remedies.

It is charged by plaintiff that the defendants have so acted as to appropriate to themselves the benefit of plaintiff's personal work and of the advertising done by him, and have diverted to their institute business and patronage rightfully belonging to plaintiff, and have thereby seriously prejudiced plaintiff's business and impaired the goodwill attached to his institute. By reason of the injury, stated in the complaint to be irreparable, caused to plaintiff and his business through the acts of the defendants, plaintiff instituted this action on November 20, 1915, praying for a prohibitory injunction and an accounting. Subsequently, and on March 28, 1916, an amended and supplemental complaint was filed by leave of court, to which the defendants jointly interposed a demurrer. After a hearing had upon the demurrer the trial court held that an injunction could not properly be granted; and the demurrer being sustained without leave to amend, judgment was entered in favor of the defendants.

The question to be determined on this appeal, therefore, is whether the amended and supplemental complaint states a cause of action, and if so, whether the plaintiff is entitled to a prohibitory injunction.

The contract which is the basis of the action contains affirmative and implied negative covenants; and it appearing from the nature of the contract that specific performance could not be decreed, it was the view of the trial judge that an injunction to prevent a breach of the contract would not lie. We think this view is correct.

When the enforcement of a contract by decree of court is difficult or practically impossible, specific performance will not be granted. "It is elementary," says Pomeroy in his work on Equity Jurisprudence, section 1405, "that the contract must be such that the court is able to make an effective decree for its specific performance, and is able to enforce its own decree when made." The contract here would require the defendant, Neal Institutes Company, to prepare the remedies used in the treatment of patients at the institutes which might be established by plaintiff, and this service is of such a character that courts could not make an effective decree for its performance. The impossibility of compelling performance

in a case of this kind is well illustrated by the case of *Barnes* v. *McAllister*, 18 How. Pr. (N. Y.) 534. Plaintiff concedes this principle of law, and accordingly does not ask for a mandatory injunction, directing said defendant to supply its remedies to plaintiff; but he does ask for a prohibitory injunction restraining the Neal Institutes Company from supplying its codefendants with said remedies in violation of its contract with plaintiff.

Where, as here, a contract contains both affirmative and negative stipulations, the authorities are in irreconcilable conflict upon the question whether equity will interfere to prevent a breach of the negative covenant when the affirmative covenant is of such a nature that it cannot be specifically enforced by a judicial decree. (2 High on Injunctions, sec. 1164.) For example, according to one line of authorities, where an opera singer or actor has contracted to sing or play for plaintiff at his theater and not elsewhere without his permission, defendant may be enjoined from singing or acting elsewhere, the court thus preventing a breach of a negative covenant, although it cannot specifically enforce the affirmative agreement by compelling defendant to sing or act for plaintiff. (*Lumley* v. *Wagner*, 1 De Gex, M. &. G. 604, [42 Eng. Reprint, 687]; *Daly* v. *Smith*, 49 How. Pr. (N. Y.) 150; *McCaull* v. *Braham*, 16 Fed. 37.) So, where defendant had agreed to make printing-presses for the plaintiff, and to sell to plaintiff its entire output, and had expressly covenanted not to make them for any other person, an injunction was granted to restrain a violation of the negative stipulation, although the affirmative agreement was not capable of being specifically enforced against the defendant. (*Myers* v. *Steel Machine Co.*, 67 N. J. Eq. 300, [57 Atl. 1080].).

Another line of cases holds to the contrary. In *Welty* v. *Jacobs*, 171 Ill. 624, [40 L. R. A. 98, 49 N. E. 723], it was held that an injunction against the proprietor of a theater will not be granted to prevent the breach of a contract to furnish the theater and its equipment to the manager of a company for a certain period, and to prevent him from furnishing the theater to a rival company during that period, since it was impossible to compel the plaintiff to carry out his contract according to its terms. So, when an actor agreed in writing with a manager not to perform at any other theater for a term of ten years, and broke his agreement, it was held

that since the court could not enforce the positive part of the contract, it would not restrain by injunction a breach of the negative part. (*Hamblin* v. *Dinneford*, 2 Edw. Ch. (N. Y.) 529.)

In those cases it was said that in effect to enjoin one from doing something in violation of his contract is an indirect mode of enforcing the affirmative provisions of such contract; that it amounts to a negative specific performance of the contract, and that courts of equity will not do indirectly what they cannot do directly.

It thus appears, as before stated, that there is a conflict in the decisions as to whether, under the circumstances of a case like this, the plaintiff would be entitled to an injunction to restrain the violation of a negative covenant of his contract with the defendant; but in this state the question was put at rest at the time of the adoption of the Civil Code by the terms of subdivision 5 of section 3423 (since incorporated in the Code of Civil Procedure [section 526]), which provides: "An injunction cannot be granted. . . . 5. To prevent the breach of a contract, the performance of which would not be specifically enforced." The same policy was pursued by the legislature in adopting subdivision 1 of that section, the subject matter dealt with in which, like the one under consideration, had given rise to conflicting decisions by the courts. That such was the policy of the legislature has been declared with reference to subdivision 1 of section 3423. (*Spreckels* v. *Hawaiian Com. etc. Co.,* 117 Cal. 377, 379, [49 Pac. 353].)

Section 3274 of the Civil Code which, with section 3423, constitutes a part of the code entitled "Relief in General," reads: "Specific and preventive relief may be given in no other cases than those specified in this part of the Civil Code."

Subdivision 5 of section 3423 is free from ambiguity or uncertainty. It clearly declares as the law in this state the rule laid down in one of two opposing lines of authority. If there could be a doubt as to the intention of the legislature in this regard, it is removed by an examination of the notes to section 1912 of Field's Proposed Draft of the Civil Code of New York, which section was practically adopted in this state; and by an examination of the notes to subdivision 5, section 3423, of the Civil Code Annotated, 1874, where the following authorities, cited as the foundation of that provision, declare that the court will not interfere by injunction to prevent the viola-

tion of an agreement of which, from the nature of the subject, there could be no decree of specific performance.   (*Newbery* v. *James,* 2 Mer. 446, [35 Eng. Reprint, 1011] ; *Williams* v. *Williams,* 3 Mer. 160, [36 Eng. Reprint, 62] ; *Hamblin* v. *Dinneford,* 2 Edw. Ch. (N. Y.) 529 ; *Sanquirico* v. *Benedetti,* 1 Barb. (N. Y.) 315.)   References in the case of *Peterson* v. *McDonald,* 13 Cal. App. 644, [110 Pac. 465], and of *Farnum* v. *Clarke,* 148 Cal. 615, [84 Pac. 166], tend to support the view here taken.

California cases cited by plaintiff to sustain his position that an injunction will issue to restrain the violation of a negative covenant are not in point, being either an exception to the rule, or based on contracts negative in form, requiring a person to refrain from doing a certain thing, and having no affirmative covenants calling for specific performance.   (22 Cyc. 845 ; 2 High on Injunctions, secs. 1134, 1166.)

From the allegations of the complaint in the case at bar it appears that plaintiff's rights spring from and grow out of a contract containing affirmative and negative stipulations and, therefore, the question as to whether or not he is entitled to injunctive relief is governed by the law as declared in subdivision 5 of section 3423 of the Civil Code.   It thus appearing that the demurrer is well grounded with respect to the Neal Institutes Company, it follows that it is also well grounded as to the other defendants, who stand in the shoes of the company with regard to certain territory described in the contract.   They were in effect the assignees of that company so far as the contract here involved is concerned, and, therefore, stand in the same relation to the plaintiff as their assignor.

The judgment is affirmed.

Beasly, J., *pro tem.,* and Zook, J., *pro tem.,* concurred.