368 P.2d 874

James B. TITUS, Jr., Petitioner,

v.

SUPERIOR COURT, MARICOPA COUN-
TY, Robert L. Myers, Judge, and Radio
Denver, Inc., dba KRIZ, Respondents.

No. 7461.

Supreme Court of Arizona,

En Banc.

Feb. 15, 1962.

Moore & Jacobowitz, Phoenix, for peti-
tioner.

Evans, Kitchel & Jenckes, Phoenix, for
respondents.

JENNINGS, Justice.

James E. Titus, Jr., hereinafter called
petitioner, applied for a writ of prohibi-
tion prohibiting the Superior Court of the
State of Arizona, in and for the County of
Maricopa, and Robert L. Myers, a judge
thereof, hereinafter called respondent Court
from enforcing an injunction theretofore
issued by respondent or taking any further
proceedings in connection therewith.

This Court thereupon issued an alterna-
tive writ of prohibition and subsequently an
amended alternative writ pending further
order. The facts surrounding the action
are these: In March, 1958, respondent
RADIO DENVER, INC., dba KRIZ,
hereinafter referred to as "KRIZ", em-
ployed petitioner as a disc jockey and news
reporter on its radio station KRIZ. The
employment agreement was oral, and the
understanding between the parties was gen-
erally limited to the type of work to be per-
formed by petitioner and the rate of pay
that he was to receive for such serv-
ices.

A short time prior to November 21, 1960,
Mr. Richard V. Wheeler, president and
general manager of KRIZ, suggested that
petitioner sign a written contract of em-

ployment. On November 21, 1960, such a contract was signed by petitioner. The relevant part of the contract reads as follows:

"Upon termination of this employment by Employee for any reason or in any manner * * * Employee agrees not to become employed by or associated with in any capacity any radio station located within 50 miles of Phoenix, for a period of one (1) year from the date of termination of this employment. * * *"

During the spring of 1961 a growing difference arose between petitioner and his program director concerning the character of the music played on petitioner's broadcasts, the mode of selecting same, and the manner of introducing and announcing such musical selections. Petitioner was subsequently suspended without pay for a period of five days during which period petitioner sought and obtained employment from Leland Bisbee Broadcasting Co., dba KRUX.

As a result petitioner is currently one of the defendants in a Maricopa County Superior Court civil action for damages based upon an alleged breach of contract of employment and for a preliminary injunction predicated on the restrictive covenant contained in said contract of employment.

On or about October 17, 1961, an injunction was issued in the aforesaid proceedings restraining petitioner from continuing his employment or association with KRUX and from accepting employment or being associated with any other radio station within fifty miles of Phoenix for the period of one year following the date of July 11, 1961.

Petitioner's Motion to Suspend Injunction Pending Appeal, filed with respondent was summarily denied. Hence the petition for a writ of prohibition.

Petitioner contends that the trial court exceeded its jurisdiction when it issued the injunction in disregard of A.R.S. § 12–1802 (5) which provides in relevant part:

"An injunction shall not be granted:

*     *     *     *     *     *

"5. To prevent breach of a contract, the performance of which would not be specifically enforced."

Petitioner next contends that prohibition is the proper remedy for the situation.

We are not called upon nor do we here determine the merits of the case. Neither shall we attempt to determine whether the trial court properly exercised its discretion in issuing the injunction, it being a matter for review on appeal after a final determination on the merits. Hislop v. Rodgers, 54 Ariz. 101, 92 P.2d 527; City of Phoenix v. Rodgers, 44 Ariz. 40, 34 P.2d 385. The question to be answered herein is: In view of A.R.S. § 12–1802(5) does the trial court have jurisdiction to enforce a restrictive covenant under which an employee agrees

that, subsequent to the termination of the employment, he will not accept employment from, or become associated with a competitor of his former employer.

A.R.S. § 12–1802 came into our law in 1913 as § 1459, R.S.1913. It has survived all revisions of our code (R.C.1928, § 4281; A.C.A.1939, § 26–104) without change or modification in wording. It was adopted from the statutes of the State of California (West's Annotated C.C., § 3423) which statute is still in full force and effect in that state.

Though in effect for almost a half century, A.R.S. § 12–1802(5) has been expressly considered and cited by this Court only twice in its reported decisions. Engelbrecht v. McCullough, 80 Ariz. 77, 292 P.2d 845; Davies v. Johnson, 22 Ariz. 63,193 P. 1019. On both occasions the court approved and enforced the mandate of the subsection of the statute, but on both occasions affirmative covenants were involved which this Court said could not be specifically enforced and therefore, the breach thereof would not be enjoined. Neither of these cases presented a negative covenant only.

The English court enforced a negative covenant not to compete *during the term of the original contract* in Lumley v. Wagner, (1852) 42 Eng.Rep. 687, 6 Eng. Rul.Cas. 652, where an operatic singer agreed not to sing elsewhere than at plaintiff's theater during the period of her contract with him.

Some American courts have followed this case but limited its rule to cases where the services contracted for by the employer were of a special or unique character since the purpose here is to indirectly enforce the contract to render services to the employer. In these jurisdictions wherein the services rendered were not of a unique character the legal remedy would be adequate and consequently equity would not enforce the promise directly, nor would it enforce the promise indirectly by enjoining the breach of the negative covenant not to compete.

However, where the promise in question is one not to compete for a period of time *after the termination of the original contract*, it is not necessary that the employee's services be of a unique character. Here the employer wants and bargains for freedom from competition or nondisclosure of business secrets. 41 A.L.R.2d 15, 124.

Both petitioner and respondent agree that A.R.S. § 12–1802(5) was designed to prevent the application of the Lumley v. Wagner rule, supra, i. e., to prevent indirect enforcement of contracts not directly enforceable.

Petitioner depreciates the distinction between covenants not to compete during the term of the original contract and those not to compete after the expiration or termination of the employment relationship. He points to the case of Davies v. Johnson, su-

pra, which cited with approval the California case of Anderson v. Neal Institutes Co., 37 Cal.App. 174, 173 P. 779, and stated:

"* * * The decision in that case is sound, and we apply it to our statute."

Petitioner contends that the basic doctrine of that case (i. e. where a contract contains both affirmative and negative stipulations, equity will not interfere to prevent a breach of the negative covenant when the affirmative covenant is of such a nature that it cannot be specifically enforced by a judicial decree) should be read into our statute so as to completely nullify the effect of the injunction in the instant case. Though petitioner's argument sounds reasonable this ultimate result should not obtain. The basic doctrine of Anderson v. Neal, supra, to which petitioner refers was applied to a very narrow set of facts—not those of the instant case. Even in that case the California court recognized an irreconcilable conflict in the cases concerning the question whether equity will interfere to prevent a breach of the negative covenant when the affirmative covenant is of such a nature that it cannot be specifically enforced. After relating the reasons for the line of cases in favor of the equitable enforcement, the court listed cases to the contrary and stated on page 780 of 173 P. the reasons why this line of cases would not restrain by injunction a breach of the negative part, to wit:

"* * * In those cases it was said that in effect to enjoin one from doing something in violation of his contract is an indirect mode of enforcing the affirmative provisions of such contract, that it amounts to a negative specific performance of the contract, and that courts of equity will not do indirectly what they cannot do directly."

Also we quote from Anderson v. Neal, supra, 173 P. at page 781:

"California cases cited by plaintiff to sustain his position that an injunction will issue to restrain the violation of a negative covenant are not in point, being either an exception to the rule, or based on contracts negative in form, requiring a person to refrain from doing a certain thing, and having no affirmative covenants calling for specific performance. * * *"

Thus while the California court correctly denied injunctive relief it also indicated that injunctive relief will be granted to enforce negative covenants which require no affirmative acts. It is readily evident that the case of Anderson v. Neal, supra, and all other California cases cited by petitioner were decisions involving an effort by the party seeking injunctive relief to force a course of affirmative action. The instant case is not of that sort. No affirmative action is sought here. The original employment relationship is at an end. KRIZ at the outset did not and does not by

this action seek to compel petitioner to render personal services to it. The relief sought by KRIZ, and that granted by the of petitioner's agreement to render services, and the preliminary injunction issued by the lower court on October 24, 1961, did not enjoin any such breach. The relief sought by KRITZ, and that granted by the trial court was to enjoin the breach of a restrictive covenant, ancillary to the employment contract, under which petitioner agreed not to accept employment from, or become associated with, a competing radio station for one year after the employment relationship with KRIZ had been terminated.

The situation presented by the case at bar presents a negative covenant only—in effect, a covenant not to compete after the termination of the employment relationship. There is no affirmative covenant involved.

On the other hand the trial court was not without precedent in granting the preliminary injunction. The case of Lassen v. Benton, 86 Ariz. 323, 346 P.2d 137, can only be justified by adopting the distinction between covenants not to compete during the term of the original contract and those not to compete after termination of the employment relationship. The pertinent part of the restrictive covenant in that case reads as follows:

"In the event that this contract shall be terminated by either party, * * *

second party * * * agrees that he will not practice Veterinary Medicine or establish, or work in any small animal hospital * * * for a period of five (5) years from the date of termination."

This Court reversed the trial court ruling denying injunctive relief to enforce a negative covenant and, at page 140 of the opinion stated as follows:

"The law is well settled that a restrictive covenant which is ancillary to a valid employment contract and which is not unreasonable in its limitations should be upheld in the absence of a showing of bad faith or of contravening public policy. * * *"

In a motion for rehearing in that case defendant called attention to A.R.S. § 12–1802(5). In its Memorandum in Support of Motion for Rehearing in Cause No. 6598 of the Supreme Court of Arizona, defendant stated at page 9 of its Memorandum as follows:

"* * * In a similar view, and in further fairness to the trial court, we feel that it is also appropriate to call this Court's attention to Sec. 12–1802 (5), A.R.S., which provides that no injunction shall issue to prevent breach of a contract the performance of which would not be specifically enforced. * * *"

On rehearing, Lassen v. Benton, 87 Ariz. 72, 347 P.2d 1012, this Court affirmed the original decision with one modification that is not material to the issue herein.

In the case of Lassen v. Benton, supra, we noted that our decision was in line with the well-established rule set forth in Briggs v. Butler, 140 Ohio St. 499, 45 N.E.2d 757, involving a similar fact situation. Two of the cases cited by the court in Briggs v. Butler, supra, clearly point out the distinction between a negative covenant applicable during the employment relationship which will not be enforced, and a negative covenant applicable after termination of employment which will be enforced. Deuerling v. City Baking Co., 155 Md. 280, 141 A. 542; Dyar Sales-Machinery Co. v. Bleiler, 106 Vt. 425, 175 A. 27. In Deuerling v. City Baking Co., supra, 141 A. at p. 544, the court said:

> "It was early recognized that a decree of specific performance against an employee under an ordinary contract of employment might result in a species of industrial servitude, which the courts would not require to be performed; and following this line of reasoning, they held, in cases in which specific performance would not be decreed, that injunctive relief in aid of specific performance would not be given. * * *"

> "* * * In the contract before us there is no restrictive covenant applicable to the term of the employment, but here it comes into force after the termination of the employment and prohibits the employee from engaging in the same business over the same route, for himself or another, for a definite period after the termination of employment. The objects to be attained by such a covenant effective during the term of the employment, and the one only to take effect at the termination of the employment, are essentially different. In the first instance, the primary purpose of the restrictive covenant is to enforce service by the employee to his employer during the term of the contract, while in the second the purpose is to prevent unfair competition by the employee or his subsequent employer, through the employee engaging in the business of the first employer, for a limited time in a definite and restricted area. * * *"

See also 28 Am.Jur., Injunctions, § 112, p. 613; § 115, p. 615.

Thus A.R.S. § 12–1802(5) works only to deprive the court of jurisdiction to enjoin breaches of covenants not to compete during the original term of the contract (where enforcement would indirectly enforce the promise to render services). It does not preclude enforcement of covenants not to compete following the termination of the basic contract (where enforcement has some value to the employer independent of

the promise to render services). Lassen v. Benton, supra.

Since the court had jurisdiction to enforce this type of negative covenant prohibition will not lie to prevent the issuance of the injunction.

For these reasons the alternative and amended alternative writs of prohibition are hereby vacated, quashed and discharged.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.