772 P.2d 36

**John BRYCELAND dba Johnny B's Disc Jockey Express, Plaintiff–Appellee,**

**v.**

**Barry NORTHEY and Jane Doe Northey, husband and wife, and Jonathan L. Malvin and Jane Doe Malvin dba Maestro Entertainment Services, Defendants–Appellants.**

**No. 1 CA–CV 88–081.**

Court of Appeals of Arizona, Division 1, Department D.

April 4, 1989.

Steven T. Augenstein, Mesa, for plaintiff-appellee.

John D. Lewis, Tempe, for defendants-appellants.

## OPINION

KLEINSCHMIDT, Judge.

This case presents questions about the construction and application of language in a contract that the appellee characterizes as a covenant not to compete. We agree that the language constitutes such a covenant, but we find that the restriction it creates is unreasonably broad and should not be enforced. We therefore reverse the judgment.

## FACTS AND PROCEDURAL HISTORY

John Bryceland, dba Johnny B's Disc Jockey Express, is engaged in the mobile disc jockey business providing recorded entertainment played by a disc jockey (deejay) at parties, weddings, dances, and similar functions. In addition to playing recorded music, the deejay often acts as a master of ceremonies and involves the group in games and dances. Bryceland has numerous competitors in the mobile disc jockey business in the Phoenix area.

Barry Northey and Jonathan Malvin applied to become deejays for Johnny B's Disc Jockey Express in 1985 and 1986 respectively. They received both classroom and on-the-job training from Bryceland. After completing their training, Northey and Malvin signed identical contracts with Bryceland in which they agreed to perform upon request. The contracts expressly provided that the deejay was an independent contractor.

Bryceland advertised, secured customers and contracted with customers to provide services for various private functions. Bryceland then assigned the jobs to its deejay. Northey performed services for Bryceland from approximately September 1985 until February 1987. Malvin performed services from January 1986 to February 1987. Shortly after leaving Johnny B's, Malvin and Northey went to work for another mobile disc jockey service owned by Northey's father.

In June 1987, Bryceland sued Malvin and Northey to enjoin them from competitive activities and alternatively sought $5,000 as damages against each defendant. He also sought to recover for the alleged disclosure of confidential information. Following a trial to the court, judgment was entered in favor of Bryceland enjoining

Northey and Malvin from competing in the mobile disc jockey business within a fifty-mile radius of the City of Phoenix for a two-year period of time dating from each defendant's respective termination dates. The court found in favor of Northey and Malvin on Bryceland's claims that they had disclosed trade secrets, customer lists, training information or any other confidential information.

Northey and Malvin have appealed from that portion of the judgment enjoining their activities and argue that: (1) the contract language does not restrict them from working for other deejays; (2) if the contract does restrict them, it is unreasonable as to time, geographical area and customers served; and (3) they were independent contractors so that the restraint on their employment is not ancillary to a contract of employment or agency and is therefore unenforceable.

## CONTRACT RESTRICTIONS

■ The contract provision at issue is paragraph ten, titled "Restrictive Covenant," which provides:

Upon termination of this Agreement and for a period of two (2) year [sic] thereafter, or any extensions or renewals thereof, and within a geographical area encompassing fifty (50) miles radius of the City of Phoenix, and also such other locations beyond said area where DeeJay has performed on behalf of Company, the DeeJay agrees that he will not, without prior written consent of Company, directly or indirectly, alone or as a member of a partnership, or as an officer, director, shareholder or employee of any corporation, organization or firm be engaged in or concerned with the activities of Company and DeeJay further agrees that he will not be employed by any customer or client of Company or potential customer or client. DeeJay shall not disclose any trade secrets, customers, lists, training information, or any confidential information to anyone not a party to this Agreement.

At trial, Malvin testified that he understood paragraph ten to mean that while he worked for Bryceland he could not do "related disk-jockey work." Under cross-examination by Bryceland's attorney, Malvin expanded upon this understanding, stating that he understood that this provision did not prohibit him from being a mobile deejay or performing related activities *after* termination of his agreement with Bryceland. This testimony was inconsistent with Malvin's prior deposition testimony, read into the record, that he believed he could not work as a mobile deejay after termination of the agreement but could work in related fields.

Northey testified that his understanding of paragraph ten was that it prevented him from working as a deejay for himself or others during the period of time that he was a deejay for Bryceland.

On appeal, Malvin and Northey's interpretation of paragraph ten is that it does not restrict them from working for others in similar occupations after their agreements with Bryceland terminated. They insist that it simply prohibits them from continuing to work for Bryceland. They single out the phrase "he will not ... be engaged in or concerned with the activities of Company" and argue that this language is simply a prohibition against continued involvement with Bryceland. The trial court found that paragraph ten restricts Northey and Malvin from working as mobile deejays after the termination of their agreement with Bryceland for a period of two years.

The interpretation of a written contract is a question of law to be determined by this court independent of the trial court's interpretation. *Harte v. Stuttgart Autohaus, Inc.*, 146 Ariz. 382, 383, 706 P.2d 394, 395 (App.1985). In making our determination we begin by attempting to ascertain the intent of the parties from the four corners of the instrument. *Hofmann Co. v. Meisner*, 17 Ariz. App. 263, 265, 497 P.2d 83, 85 (1972).

We reject Northey and Malvin's interpretation of the contract for several reasons. First, paragraph ten must be read as a whole and in light of all other parts of the contract. *See Cavanagh v. Schaefer*, 112

Ariz. 600, 602, 545 P.2d 416, 418 (1976). Contrary to Northey and Malvin's assertion at trial, paragraph ten does not prohibit them from working as deejays for others or for themselves while they were working for Bryceland. This prohibition is expressly covered in paragraph six of the agreements. Paragraph ten contains a covenant not to be "engaged in or concerned with the activities of Company" and not to be "employed by any customer or client of Company or potential customer or client" for two years following termination of the agreement. We will interpret a contract in a manner which gives a reasonable meaning to the manifested intent of the parties rather than an interpretation that would render the contract unreasonable. *Employer's Liability Assur. v. Lunt,* 82 Ariz. 320, 328, 313 P.2d 393, 399 (1957). It is unreasonable to assert that "activities of Company" means simply that following termination of the agreement, the deejay cannot continue to work for the company. The first sentence of paragraph ten presumes a termination of any working relationship between the parties. When read in conjunction with the prohibition against employment by any "customer or client" or "potential customer or client" of the Company, "activities of Company" must refer to the kind of activities in which the Company is engaged—i.e., a mobile disc jockey service. In light of this express language, Northey and Malvin's attempt to relate paragraph ten to a restriction of their activity during the term of the agreement is patently unreasonable.

## REASONABLENESS OF THE RESTRICTIVE COVENANT

Bryceland, in support of his argument that the covenant is enforceable, cites *Titus v. Superior Court,* 91 Ariz. 18, 368 P.2d 874 (1962). The *Titus* case, like this case, involved the application of a restrictive employment covenant to a disc jockey, although the disc jockey there was a full-time radio station employee, not a part-time performer at a mobile deejay service. *Titus,* moreover, was a special action in which the court simply held that A.R.S. § 12–1802(5), which specifies that an in-

junction is not available to prevent a breach of contract, did not apply to covenants not to compete. The court expressly declined to consider whether the covenant was otherwise enforceable. *Titus,* 91 Ariz. at 19, 368 P.2d at 875. *Titus* need concern us no further.

■ Restrictive covenants that tend to prevent an employee from pursuing a similar vocation after termination of employment are disfavored and are strictly construed against the employer. *Amex Distrib. Co. v. Mascari,* 150 Ariz. 510, 514, 724 P.2d 596, 600 (App.1986). A contrasting rule applies to a covenant given in the sale of a business. As to the latter, courts are more lenient because of the need to see that goodwill is effectively transferred. *Id. See also Restatement (Second) of Contracts* § 188 comment b (1981). The burden is on the employer to prove the extent of its protectable interest. *Amex,* 150 Ariz. at 519, 724 P.2d at 605.

■ Restrictive covenants that are no broader than the employer's legitimately protectable interest will be enforced. *American Credit Bureau, Inc. v. Carter,* 11 Ariz.App. 145, 147, 462 P.2d 838, 840 (1969). *See also Restatement (Second) of Contracts* § 188 (1981). An employer may not enforce a post-employment restriction on a former employee simply to eliminate competition *per se. Amex,* 150 Ariz. at 518, 724 P.2d at 604. Comment b to section 188 of the *Restatement* provides in part:

> [A post-employment restraint] must usually be justified on the ground that the employer has a legitimate interest in restraining the employee from appropriating valuable trade information and customer relationships to which he has had access in the course of his employment. Arguably the employer does not get the full value of the employment contract if he cannot confidently give the employee access to confidential information needed for [the] most efficient performance of his job. But it is often difficult to distinguish between such information and normal skills of the trade, and preventing

use of one may well prevent or inhibit use of the other.

■ At trial, Bryceland's primary concern was that Malvin and Northey had taken classroom notes, could tell others that they were trained by Bryceland and would use their skills to serve another employer. These will not justify a restraint. A restrictive covenant is not enforceable to prevent a former employee from using the skills and talents he learns on the job in a new job. *See Lessner Dental Laboratories, Inc. v. Kidney*, 16 Ariz.App. 159, 162, 492 P.2d 39, 42 (1971).

The trial court found that there had been no appropriation and disclosure of trade secrets and customer information. Bryceland has not appealed from this finding. Thus, the interest for which Bryceland obtained protection was not its proprietary interest in confidential information.

■ An employer does have a protectable interest in maintaining customer relationships when an employee leaves. The law will guard this interest by means of a covenant not to compete for as long as may be necessary to replace the employee and give the replacement a chance to show that he can do the job. *Amex*, 150 Ariz. at 518, 724 P.2d at 604. Each case hinges on its own particular facts. *See, e.g., Gann v. Morris*, 122 Ariz. 517, 518, 596 P.2d 43, 44 (App.1979). *See generally* Annot. 36 A.L. R.4th 1139 (1985). Malvin and Northey, applying this rule, contend that the restrictive covenant is unreasonable in length. In *Amex*, we said:

> In determining whether a restraint extends for a longer period of time than necessary to protect the employer, the court must determine how much time is needed for the risk of injury to be reasonably moderated. When the restraint is for the purpose of protecting customer relationships, its duration is reasonable only if it is no longer than necessary for the employer to put a new man on the job and for the new employee to have a reasonable opportunity to demonstrate his effectiveness to the customers. If a restraint on this ground is justifiable at all, it seems that a period of several

months would usually be reasonable. If the selling or servicing relationship is relatively complex, a longer period may be called for.

*Amex*, 150 Ariz. at 518, 724 P.2d at 604 (quoting Blake, *Employment Agreement Not To Compete*, 73 Harv.L.Rev. 625, 677 (1960)).

■ The apparent purpose of this principle is to prevent a skilled employee from leaving an employer and, based on his skill acquired from that employment, luring away the employer's clients or business while the employer is vulnerable—that is— before the employer has had a chance to replace the employee with someone qualified to do the job. Here, the evidence showed that it took approximately fourteen weeks for adequate schooling and on-the-job training of new personnel to handle the duties of a deejay, far less than the two-year restriction contained in the agreement. Bryceland did not present evidence, which the trial court accepted as true, of any protectable interest other than the time it would require to replace Malvin and Northey with trained deejays.

We also note, without deciding, that the restriction against employment by any "potential customer or client" of Bryceland may be overly broad. This language goes well beyond protecting Bryceland from Malvin and Northey taking customers away as a result of meeting the customers during the course of their appearances for Johnny B's. *See Amex*, 150 Ariz. at 517–18, 724 P.2d at 603–04. *Cf. Olliver/Pilcher Ins. v. Daniels*, 148 Ariz. 530, 715 P.2d 1218 (1986).

We find that the restrictive covenant is unreasonable in restricting Northey and Malvin's future employment as mobile disc jockeys for a two-year period. Neither the contract itself nor other evidence in the record indicates that this unreasonable portion of the contract was severable. *See Amex*, 150 Ariz. at 519, 724 P.2d at 605; *Olliver/Pilcher Ins.*, 148 Ariz. at 532–33, 715 P.2d at 1220–21. Accordingly, we find that the covenant is unenforceable and reverse the judgment. It is therefore unnecessary to consider Malvin and Northey's

contention that the restrictive covenant was not ancillary to a contract of employment or agency.

The judgment in favor of Bryceland is reversed, the injunction is vacated, and this matter is remanded to the trial court for reconsideration of Malvin and Northey's motion for attorneys' fees. We grant Malvin and Northey's request for attorneys' fees on appeal under A.R.S. § 12–341.01 in an amount to be determined following submission of a statement of costs in compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

GRANT, C.J., and FIDEL, J., concur.