NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

JOHN J. SHUFELDT, MD, a married man,
*Plaintiff/Appellant*,

*v.*

NEXTCARE, INC., a Delaware corporation,
*Defendant/Appellee*.

No. 1 CA-CV 15-0327
FILED 11-10-2016

---

Appeal from the Superior Court in Maricopa County
No. CV2012-014120
The Honorable Patricia A. Starr, Judge

**AFFIRMED IN PART, VACATED IN PART AND REMANDED**

---

COUNSEL

Jennings, Haug & Cunningham, L.L.P., Phoenix
By Mark E. Barker, Jorge Franco, Jr., Russell R. Yurk
*Counsel for Plaintiff/Appellant*

Sacks Tierney P.A., Scottsdale
By Matthew F. Winter
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Margaret H. Downie joined.

---

**T H U M M A**, Judge:

¶1 Plaintiff Dr. John J. Shufeldt appeals from the entry of summary judgment in favor of defendant NextCare, Inc. and the denial of his motion for reconsideration. Shufeldt argues: (1) a written noncompetition agreement between the parties is unenforceable and (2) if it is enforceable, there are genuine issues of material fact precluding summary judgment. As discussed below, the superior court properly determined that the noncompetition agreement was enforceable but disputed issues of material fact exist that preclude summary judgment. Accordingly, summary judgment is vacated and this matter is remanded for further proceedings consistent with this decision.

### FACTS[1] AND PROCEDURAL HISTORY

¶2 NextCare owns and operates walk-in family practice medical clinics that specialize in urgent, accident and injury care. Shufeldt, a medical doctor, founded NextCare in 1993 and continuously served as NextCare's chief executive officer and board chair until August 31, 2010.

¶3 While at NextCare, Shufeldt and NextCare entered into various written agreements, including a 2005 employment agreement. In 2008, to secure an investment in NextCare, the parties amended the employment agreement in a detailed, integrated agreement. In this 2008 agreement, NextCare agreed to pay Shufeldt a $325,000 annual salary, annual bonuses, benefits and expenses. Shufeldt agreed to various undertakings, including being bound by a noncompetition agreement (the Noncompetition Agreement).

---

[1] This court reviews the entry of summary judgment de novo, "viewing the evidence and reasonable inferences in the light most favorable to" Shufeldt. *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003).

¶4 In the Noncompetition Agreement, Shufeldt

> agree[d] that during my Relationship with [NextCare] and for a period of 12 months immediately following the termination of that Relationship, . . . I shall not, either directly or indirectly, . . . engage in any Competing Business within a 25 mile radius of any location where [NextCare] conducts business or has conducted business (or has at any time actively explored conducting business) during the 24 months preceding my termination of my Relationship with [NextCare].

"Competing Business," in turn, was defined to "mean any business involving the development, delivery or management of urgent care, family, workers' compensation or occupational health-related, or emergency medical services (other than practicing medicine in an emergency department in a hospital)." The Noncompetition Agreement did not limit Shufeldt's "ability to practice medicine personally as a treating physician so long as I do not practice medicine in, or have a role in the marketing, management, consulting or business planning for, or an ownership in, a Competing Business."

¶5 In 2010, Shufeldt decided to resign from, and terminate his employment with, NextCare, although he remained a significant NextCare shareholder. In a written Separation Agreement effective August 31, 2010, NextCare agreed to pay Shufeldt $487,500 over an 18-month period, an amount equal to his $325,000 annual salary for that time. In this Separation Agreement, Shufeldt agreed to be bound by the Noncompetition Agreement during this 18-month period, six months longer than he had agreed to in 2008. The Separation Agreement specified that any purported waiver of "any condition or of any breach of any term or covenant" would not be effective unless in writing.

¶6 At about this same time, Shufeldt developed an Internet-based virtual medicine delivery platform called MeMD. At his deposition, Shufeldt testified he presented the MeMD concept to NextCare in September 2010 but that NextCare declined his invitation to partner in MeMD. Shufeldt testified he developed MeMD by partnering with an urgent care facility in Lake Havasu City, Arizona. Through MeMD, Shufeldt apparently began treating patients online in May 2011, many of

whom NextCare alleges lived within the geographic scope of the Noncompetition Agreement.

¶7        In late June 2011, NextCare wrote Shufeldt that it would not make the remaining monthly Separation Agreement payments (through February 2012 and totaling nearly $260,000). NextCare took the position that Shufeldt's "involvement with MeMD and [Shufeldt's] and MeMD's activities constitute engagement in a 'Competing Business'" in breach of the Noncompetition Agreement contained in the Separation Agreement.

¶8        The Noncompetition Agreement expired on February 28, 2012. In September 2012, Shufeldt filed this case alleging NextCare breached the Separation Agreement in June 2011 by failing to make the monthly payments. Shufeldt alleged the Separation Agreement "expressly modified and extended" the Noncompetition Agreement, that NextCare materially breached by failing to pay Shufeldt and that, as a result, Shufeldt had been damaged in the amount of nearly $260,000 plus attorneys' fees and costs. NextCare's answer stated Shufeldt breached "the Separation Agreement and the . . . Noncompetition Agreement by operating a competing enterprise during the terms of those respective agreements" and, tacitly asserting this constituted the first material breach, alleged NextCare "owes no further payments to" Shufeldt.

¶9        After the completion of discovery, NextCare moved for summary judgment, claiming that by owning, controlling and treating patients through MeMD, Shufeldt engaged in a "Competing Business" and breached the Separation Agreement and Noncompetition Agreement. Shufeldt cross-moved for summary judgment, claiming the Noncompetition Agreement was unenforceable and severable from the Separation Agreement and that he was entitled to judgment as a matter of law.

¶10        After full briefing, and waiver of oral argument, the superior court granted NextCare's motion and denied Shufeldt's motion. After rejecting as a matter of law Shufeldt's argument that his presentation of the MeMD concept to NextCare in September 2010 resulted in a waiver of NextCare's contractual rights, the court rejected Shufeldt's argument that the Noncompetition Agreement was unenforceable:

> The reasonableness of a restrictive covenant "is a fact-intensive inquiry that depends on the totality of the circumstances." *Valley Medical Specialists v. Farber*, 194 Ariz. 363, 369, ¶ 20, 982

P.2d 1277, 1283 (1999). Moreover, "each case must be decided on its own unique facts." *Id.* at ¶ 21.

Here, the Court finds no financial hardship to Shufeldt, who was paid his salary during the time he was restricted from engaging in a competing business. Nor does the Court find an unequal bargaining position between Shufeldt, the founder and CEO of NextCare, and NextCare itself.

The Arizona Supreme Court has held that a restrictive covenant between a physician and his employer cannot be enforced when the employers' "interest in enforcing the restriction is outweighed by the likely injury to patients and the public in general." *Farber*, *supra*, at 372, ¶ 33, 982 P.2d at 1286. Here, the Court finds that the noncompetition agreement had no effect on patient choice or the general availability of urgent care to the public, and thus resulted in no likely injury to patients or to the public in general.

Balancing all of the factors, the Court finds the noncompetition agreement in this case to be reasonable, and thus enforceable.

¶11 Shufeldt moved for reconsideration, claiming: (1) MeMD is not a "Competing Business;" (2) "whether NextCare committed the first material breach remains an issue of fact for the jury;" (3) a written waiver of the contractual terms by NextCare was not required, suggesting the issue of waiver created an issue of fact for the jury and (4) the Noncompetition Agreement is unenforceable. Finding "no circumstances warranting reconsideration in this case," the court denied the motion without a response. The court then entered final judgment awarding

NextCare attorneys' fees and taxable costs. *See* Ariz. R. Civ. P. 54(c) (2016).[2]

**¶12**        This court has jurisdiction over Shufeldt's timely appeal pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(4) and -2101(A)(1).

## DISCUSSION

**¶13**        Summary judgment is proper "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). This court reviews the entry of summary judgment de novo, to determine "whether any genuine issues of material fact exist," *Brookover v. Roberts Enter., Inc.*, 215 Ariz. 52, 55 ¶ 8 (App. 2007), and will affirm summary judgment if it is correct for any reason, *Hawkins v. State*, 183 Ariz. 100, 103 (App. 1995). Although reasonableness in determining the enforceability of a noncompetition agreement is a fact-intensive inquiry based on the totality of the circumstances, *see Farber*, 194 Ariz. at 366-67 ¶ 11, this court reviews de novo the entry of summary judgment.

## I.        The Noncompetition Agreement Is Enforceable.

**¶14**        Shufeldt argues the Noncompetition Agreement was unenforceable under *Farber*. NextCare argues *Farber* does not apply:

> *Farber* and all of the other restrictive covenant cases involve restrictive covenants entered into as part of an employment agreement which were being enforced after termination of the employment without payment of additional, substantial sums to the former employee in consideration for compliance with that covenant. In contrast, the instant case involves a restrictive covenant incorporated into a separation agreement, and in consideration for compliance therewith, Dr. Shufeldt, was to receive his full salary during the term of the covenant. This is a glaring and

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

dispositive distinction from *Farber* and the
other restrictive covenant cases.

At oral argument before this court, NextCare argued the enforceability of
the Noncompetition Agreement is governed by general contract principles
(not *Farber*). Because NextCare had shown offer, acceptance, consideration
and certainty of terms, it argued the Noncompetition Agreement was
enforceable without further inquiry. *See K-Line Builders, Inc. v. First Federal
Savings & Loan Ass'n*, 139 Ariz. 209, 212 (App. 1983) (citing cases).

¶15        As NextCare suggests, *Farber* is different from this case in
significant substantive and procedural ways. First, in this case, the
Noncompetition Agreement allowed Shufeldt to practice medicine in
hospital emergency departments and non-Competing Businesses, while
the covenant in *Farber* prohibited the doctor "from providing any and all
forms of 'medical care.'" 194 Ariz. at 369 ¶ 21. Second, in this case, the
Noncompetition Agreement obligated NextCare to pay Shufeldt nearly
$500,000 during the covenant after the termination of his employment (if
Shufeldt did not first materially breach his obligations), while the
covenant in *Farber* involved no post-employment compensation. 194 Ariz.
at 364-65 ¶ 3. Third, Shufeldt filed this case seeking money damages *after*
the Noncompetition Agreement expired given the passage of time, while
in *Farber*, the former employer sought to enjoin the doctor from practicing
medicine *during* the noncompetition period. 194 Ariz. at 365-66 ¶¶ 3-4.
Unlike *Farber*, NextCare never sought to enjoin Shufeldt from practicing
medicine in any respect.

¶16        Notwithstanding these significant differences, NextCare has
not shown the analysis in *Farber* does not apply here. These differences
show that many of the concerns expressed in *Farber* about protecting the
doctor-patient relationship are not present in this case. 194 Ariz. at 369 ¶
19. But NextCare has failed to show *Farber* is inapplicable. Accordingly,
notwithstanding these significant differences, *Farber* provides the proper
analytical framework for assessing the enforceability of the
Noncompetition Agreement.

¶17        In general, "a contract restricting the right of an employee to
compete with an employer after termination of employment 'which is not
unreasonable in its limitations should be upheld in the absence of a
showing of bad faith or of contravening public policy.'" *Fearnow v.
Ridenour, Swenson, Cleere & Evans, P.C.*, 213 Ariz. 24, 26 ¶ 8 (2006) (quoting
*Lassen v. Benton*, 86 Ariz. 323, 328 (1959)). Because "the doctor-patient
relationship is special and entitled to unique protection," a

noncompetition agreement to which a physician is a party "will be strictly construed for reasonableness" based on "the totality of the circumstances." *Farber*, 194 Ariz. at 369 ¶¶ 19, 20. "A restriction is unreasonable and thus will not be enforced: (1) if the restraint is greater than necessary to protect the employer's legitimate interest; or (2) if that interest is outweighed by the hardship to the employee and the likely injury to the public." *Id.* at 369 ¶ 20 (citations omitted). This "reasonableness inquiry" focuses on "the interests of the employer, employee, patients, and public in general," recognizing that "no exact formula can be used" in balancing these competing interests. *Id.* (citations omitted).

**¶18**        "Balancing all of the factors," the superior court concluded the Noncompetition Agreement was reasonable, noting: (1) there was no financial hardship to Shufeldt, "who was paid his salary during the time he was restricted from engaging in a competing business;" (2) there was no unequal bargaining power; and (3) "the noncompetition agreement had no effect on patient choice or the general availability of urgent care to the public, and thus resulted in no likely injury to patients or to the public in general." Shufeldt claims this was reversible error.

**¶19**        Focusing on NextCare's interests, it is not genuinely disputed that Shufeldt "was intimately familiar and involved with all of NextCare's operations, strategies, policies, procedures and data." Indeed, it appears undisputed that Shufeldt was an "inventor of the urgent care model and an expert in the field of urgent care business." NextCare demonstrated it had a legitimate interest in restricting Shufeldt "from offering to any competing businesses his knowledge and expertise about the *urgent care business* gained *during* his tenure as the founder, owner, chairman and CEO" of NextCare. *See Farber*, 194 Ariz. at 370 ¶ 22.

**¶20**        Shufeldt's interest, at all times relevant here, was practicing emergency medicine, which the Noncompetition Agreement restricted, but did not preclude. Apart from the terms of the Noncompetition Agreement, NextCare never sought to enjoin Shufeldt from practicing medicine in any respect. And the Separation Agreement obligated NextCare to pay Shufeldt during the term of the Noncompetition Agreement, provided he complied with his contractual obligations. Thus, Shufeldt was restricted in, but not prohibited from, practicing emergency medicine and did not incur a financial hardship. *Cf. Farber*, 194 Ariz. at 371 ¶ 27 (noting "restraint must be limited to the particular specialty" involved).

**¶21** The Noncompetition Agreement restricted Shufeldt's practice in an urgent care facility for 18-months within a 25-mile radius of any location where NextCare "conducts business or has conducted business (or has at any time actively explored conducting business) during the 24 months preceding" Shufeldt's termination. Shufeldt argues this restriction limited him from engaging in a "Competing Business" in the Phoenix or Tucson metropolitan areas. As noted above, however, unlike in *Farber*, NextCare agreed to compensate Shufeldt during this 18-month period. Similarly, unlike in *Farber*, Shufeldt could practice medicine in hospital emergency departments (including "in a hospital emergency room") and non-Competing Businesses. *Cf. Farber*, 194 Ariz. at 366 ¶6, 370 ¶26, 372 ¶33 (holding noncompetition agreement precluding pulmonologist from practicing any type of medicine for three years and covering a five-mile radius of all medical centers unreasonable). These distinctions from *Farber* do not compel a finding that the geographic scope of the restriction required the Noncompetition Agreement to be stricken as unenforceable.[3]

**¶22** Nor does patient choice or the general availability of urgent care mandate a finding the Noncompetition Agreement was unenforceable. NextCare did not seek injunctive relief prohibiting Shufeldt from practicing medicine. Moreover, although even an unenforced covenant not to compete could have a chilling impact on a doctor's practice, there is no showing that occurred here. Indeed, before

---

[3] Although the geographic scope of a covenant not to compete is a factor, it is not dispositive. *Compare Phoenix Orthopeadic Surgeons, Ltd v. Peairs*, 164 54, 60 (App. 1989) (rejecting challenge to covenant prohibiting conduct within a five-mile radius of former employer's offices), *overruled on other grounds by Farber*, 194 Ariz. 363, *with Farber*, 194 Ariz. at 365, 371 (striking similar covenant); *see also Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 980 (D. Ariz. 2006) (rejecting, in issuing preliminary injunction, challenge to covenant prohibiting conduct within 25-mile radius of former employer's offices) (applying Arizona law); *Bed Mart, Inc. v. Kelley*, 373 202 Ariz. 370, 373-74 ¶¶17-18 (App. 2002) (rejecting challenge to covenant prohibiting conduct within 10-mile radius of former employer's offices); *Varsity Gold, Inc. v. Porzio*, 202 Ariz. 355, 356 ¶ 4 (App. 2002) (striking covenant prohibiting conduct "'in the State of Pennsylvania or any contiguous state'"); *Gann v. Morris*, 122 Ariz. 517, 518 (App. 1979) (rejecting challenge to covenant prohibiting conduct in "Tucson and a 100 mile radius of Tucson"). As *Farber* noted in distinguishing *Peairs*, "each case must be decided on its own unique facts." 194 Ariz. at 369 ¶ 21.

the superior court, Shufeldt asserted that he "started an innovative online venture [MeMD] intended *to expand patient choice* by providing a new platform for non-urgent patients to consult with physicians via remote online interaction." (Emphasis added.)

¶23        On this record, applying *Farber* and given the significant differences between this case and *Farber*, the court did not err in concluding the Noncompetition Agreement was not unreasonable and was enforceable. *See Farber*, 194 Ariz. at 365 ¶ 11 ("'Each case hinges on its own particular facts.'") (quoting *Bryceland v. Northey,* 160 Ariz. 213, 217 (App. 1989)); *see also id.* at 369 ¶ 20 ("Reasonableness is a fact-intensive inquiry that depends on the totality of the circumstances.") (citing cases).

¶24        Shufeldt next argues the superior court erred by not explicitly imposing a burden on NextCare to show the Noncompetition Agreement was reasonable. *See Farber*, 194 Ariz. at 372 ¶ 33 ("The burden is on the party wishing to enforce the covenant to demonstrate that the restraint is no greater than necessary to protect the employer's legitimate interest, and that such interest is not outweighed by the hardship to the employee and the likely injury to the public. Here VMS has not met that burden."). But the court properly found the Noncompetition Agreement was reasonable based on the record presented in briefing cross-motions for summary judgment. On this record, Shufeldt has not shown any allocation of the appropriate burden resulted in an erroneous decision.

¶25        Shufeldt next argues the superior court "made no inquiry or findings" regarding NextCare's legitimate interests and whether the Noncompetition Agreement was "no greater than necessary." The court expressly discussed why it found the Noncompetition Agreement was enforceable. Moreover, although courts are encouraged "to state on the record the reasons for" ruling on a motion for summary judgment, Ariz. R. Civ. P. 56(a), as applicable here, "[f]indings of fact and conclusions of law are unnecessary on decisions of motions" for summary judgment, Ariz. R. Civ. P. 52(a). And, as discussed above, given the differences between this case and *Farber*, Shufeldt has shown no substantive error in assessing the Noncompetition Agreement. Accordingly, Shufeldt has not shown the superior court erred in concluding the Noncompetition Agreement was enforceable.[4]

---

[4] For similar reasons, Shufeldt has not shown the superior court erred in denying his motion to reconsider addressing these issues. In addition,

II. **Genuine Issues Of Material Fact Preclude Summary Judgment On Breach.**

¶26        "'To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its [material] breach and the resulting damages.'" *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 97 ¶ 16 (2015) (quoting *Graham v. Asbury*, 112 Ariz. 184, 185 (1975)). As applicable here, the inquiry includes whether Shufeldt (by competing) or NextCare (by refusing to pay) committed the first material breach of the Separation Agreement. *See Murphy Farrell Development, LLLP v. Sourant*, 229 Ariz. 124, 133 ¶ 33 (App. 2012) (noting "that an uncured material breach of contract relieves the non-breaching party from the duty to perform and can discharge that party from the contract") (citing authority). Because the Noncompetition Agreement and the Separation Agreement are enforceable, the remaining issues to be resolved in addressing the parties' competing motions for summary judgment were whether, as a matter of law, Shufeldt committed the first material breach of the Separation Agreement, relieving NextCare of its obligation to pay him.

¶27        By entering summary judgment and then final judgment in its favor, the superior court determined, as a matter of law, that MeMD was a Competing Business; that Shufeldt breached; that Shufeldt's breach constituted the first material breach and that, as a result, NextCare was relieved of its obligation to make the remaining payments. On appeal, Shufeldt claims disputed issues of material fact precluded summary judgment on these points, including whether his conduct constituted a material breach and, even if it did, whether NextCare waived its rights by approving (or not objecting to) his actions involving MeMD as early as September 2010.

¶28        The record shows the parties provided conflicting evidence about their actions from August 31, 2010 (the effective date of the Separation Agreement) until NextCare stopped paying Shufeldt in June 2011.

¶29        Shufeldt's evidence suggests that, in and after September 2010, but before MeMD's website launched, Shufeldt spoke to NextCare's president John Julian several times. Shufeldt testified at his deposition that

---

given this conclusion, Shufeldt's argument that the Noncompetition Agreement was severable from the Separation Agreement is moot.

he presented the idea of a partnership with MeMD to Julian multiple times, and to another representative of NextCare as well, and NextCare declined. Shufeldt also testified that he did not believe the MeMD virtual medicine concept violated the Noncompetition Agreement. Shufeldt testified that, after he presented the MeMD concept to NextCare in September 2010, no one at NextCare told him that his efforts with MeMD would violate the Noncompetition Agreement.

¶30        Shufeldt further testified that he received an email from Julian in January 2011 stating "I hope you are doing well John, and the new ventures are progressing." Shufeldt testified that, even though he did not believe the practice of virtual medicine violated the Noncompetition Agreement, MeMD partnered with an urgent care facility in Lake Havasu City, outside the geographic scope of the Noncompetition Agreement, in an effort to be "overly cautious." Shufeldt offered evidence (including pre-dispute evidence) that could be read as indicating MeMD was not a Competing Business, including that it was affiliated with a Lake Havasu City facility well beyond the 25-mile radius of the Noncompetition Agreement and that MeMD did not compete with NextCare.

¶31        NextCare's evidence was in conflict. During his deposition, Julian claimed no one at NextCare received a personal solicitation from Shufeldt regarding MeMD. According to Julian, MeMD sent a general solicitation to NextCare officer Laurel Stoimenoff in the fall of 2010. Julian described it as:

> a blanket, you know, marketing solicitation sent probably to everybody on an urgent care list. Because it was somewhat generic in form. And it basically said, you know, MeMD would like to recruit your urgent care physicians to be part of our network to provide telemedicine and urgent care services for our patients. If you would like to generate revenue for your providers and generate traffic for your clinic, you know, please join us, call this number.

After Julian received the flyer, he put it in a folder he kept about MeMD. Julian and others at NextCare, including NextCare's general counsel, conducted a month-long review of MeMD "in the fall of 2010." At some point, NextCare sent the collected information to outside counsel with the directive "to contact [Shufeldt] and let him know that given all the information we've acquired here, we believe he's competing against us

and he should cease and desist." This apparently led to NextCare's June 2011 decision to stop paying Shufeldt. This conflicting evidence presents disputed issues of material fact not appropriate for resolution by summary judgment. *See generally* Ariz. R. Civ. P. 56(a).

¶**32**        As discussed above, Shufeldt testified he met with Julian starting in September 2010 and unsuccessfully invited NextCare to partner with MeMD. Shufeldt asserted he disclosed to NextCare what MeMD would be, what he intended to do with MeMD and NextCare expressed no concern that MeMD's conduct would violate the Noncompetition Agreement. Indeed, Shufeldt testified that no one from NextCare told him MeMD would violate the Noncompetition Agreement. According to Shufeldt's facts, MeMD, as a virtual medicine delivery platform partnered with a Lake Havasu City facility outside of the geographic scope of the Noncompetition Agreement, may not have been a "Competing Business" under that contract, an issue implicating whether Shufeldt's affiliation with MeMD was the first material breach of the parties' contractual obligations.

¶**33**        As noted by the Arizona Supreme Court, such pre-dispute conduct may be relevant to determining the meaning of contract terms, which implicates whether the contract was breached. *See Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 393 (1984) ("Evidence on surrounding circumstances, including negotiation, prior understandings, subsequent conduct and the like, . . . may be used to interpret the meaning of the provisions contained in the agreement. This method obtains even though the parties have bargained for and written the actual words found in the instrument.") (citations omitted); *Abrams v. Horizon Corp.*, 137 Ariz. 73, 79 (1983) (similar). These facts, which NextCare disputed, indicate the issue could not be resolved as a matter of law on this record.

¶**34**        Shufeldt asserted this same conduct constituted a waiver by NextCare, even if Shufeldt's conduct otherwise could be construed as having materially breached his contractual obligations to NextCare. The summary judgment ruling stated NextCare never expressly waived its rights or made unequivocal statements that it did not view MeMD as a competing business; that Shufeldt never told NextCare that MeMD would be competing with NextCare and that the Separation Agreement provided that any waiver must be in writing and no such written waiver exists. But a party need not expressly and unequivocally waive a contractual right for a waiver to be effective. Instead, such a waiver may occur given the passage of time, by inaction, implied from the circumstances or by

conduct that "warrants an inference of . . . an intentional relinquishment" of a known right. *Russo v. Barger*, 239 Ariz. 100, 103 ¶ 12 (App. 2016); *see also College Book Centers, Inc. v. Carefree Foothills Homeowners' Ass'n*, 225 Ariz. 533, 539 ¶ 22 (App. 2010) ("In the absence of an express waiver, the intent to relinquish a right may be implied from the circumstances. In context of this case, we do not find a meaningful distinction between action and inaction.") (citing *Southwest Cotton Co. v. Valley Bank*, 26 Ariz. 559, 563 (1924) (noting for waiver inferred from conduct, "it is essentially a matter of intention . . . and, if the conduct from which such intention must be inferred is such that reasonable minds may differ as to what the inference should be whether there is a waiver becomes a question of fact to be determined from the evidence submitted")).

**¶35**        As discussed above, what Shufeldt told NextCare about what MeMD would be doing is disputed. And the lack of a written waiver required by the contract here is not dispositive. *See Phoenix Orthopeadic Surgeons, Ltd v. Peairs*, 164 Ariz. 54, 57-58 (App. 1989) (noting "general rule" that the "parties to a written contract may alter or modify its terms by a subsequent oral agreement even though the contract precludes oral modification") (citation omitted), *overruled on other grounds by Farber*, 194 Ariz. 363.

**¶36**        On the record presented, disputed issues of material fact precluded summary judgment, including, but not limited to, (1) the meaning of "Competing Business;" (2) whether Shufeldt's conduct falls within the meaning of "Competing Business;" (3) which party committed the first material breach and (4) whether NextCare waived its right to enforce the Noncompetition Agreement. Accordingly, the entry of summary judgment is vacated.[5]

## III.    Attorneys' Fees And Costs.

**¶37**        Both parties request attorneys' fees and costs incurred on appeal. These requests are denied without prejudice to their reassertion with the superior court upon final resolution of the parties' claims on remand.

---

[5] As a result, Shufeldt's arguments about the denial of his motion to reconsider these issues are moot.

## CONCLUSION

¶**38** Although the superior court properly found the Noncompetition Agreement was enforceable, disputed issues of material fact precluded summary judgment. Accordingly, summary judgment is vacated and this matter is remanded for further consideration consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:   AA