No. 87-465

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

WESTLAND ENTERPRISES, INC.,
and VERNON F. TAYLOR, Trustee,

          Plaintiffs and Respondents,

     -vs-

BOYNE USA, INC.; RURAL IMPROVEMENT
DISTRICT #305 and its Directors,
JACK HARPER, JOHN McCULLEY, and RAYMOND
J. TOUT; GALLATIN COUNTY COMMISSIONERS,
RAY WHITE, JANE JELINSKI and WILBUR VISSER;
and MADISON COUNTY COMMISSIONERS, MARIE McALEAR,
BILL DRINGLE and JOHN ALLHANDS,

          Defendants and Appellants.

_____

APPEAL FROM: District Court of the Eighteenth Judicial District,
             In and for the County of Gallatin,
             The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:
     For Appellant:

          Kirwan & Barrett; Peter M. Kirwan, Bozeman, Montana
          A. Michael Salvagni, County Attorney; Duke Wolf, Deputy
          County Attorney, Bozeman, Montana
          Loren Tucker, County Attorney, Virginia City, Montana

     For Respondent:

          Morrow, Sedivy & Bennett; Edmund P. Sedivy, Bozeman,
          Montana

_____

Submitted on Briefs:  March 9, 1989

Decided: April 27, 1989

Filed:

_____
                                    Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court

This appeal involves a dispute over contract terms granting use of a sewer system located at Big Sky, Montana. Defendants Boyne USA, et al. (Boyne) appeal from the judgment of the District Court of the Eighteenth Judicial District, Gallatin County. The District Court enjoined Boyne from allowing further connections to the system until the sewage facility had been expanded sufficiently to accommodate sewage from future real estate development contemplated by plaintiffs Westland Enterprises, et al. (Westland). The court also granted declaratory relief by quantifying the treatment capacity to be provided for Westland under the terms of the contract. We affirm in part and reverse in part.

Boyne presents six issues for review:

1. Were the District Court's original Findings of Fact supported by the record?

2. Did the District Court have jurisdiction to make a de novo determination of the capacity and adequacy of the RID #305 Sewage Treatment Facility?

3. Was the District Court's Order entered after the second trial supported by any findings of fact or evidence of record?

4. Did the District Court err in interpreting the contract at issue to require that RID #305 provide Plaintiffs with present unused sewage treatment capacity for their future development?

5. Does the contract at issue contain a condition precedent and, if so, have Plaintiffs performed the condition?

6. Is an injunction a proper remedy where the contract at issue could not be specifically enforced?

2

The record from the District Court in this case is lengthy. The facts are many, and some have been argued vehemently. There are also a number of parties involved. In the interests of keeping the discussion of the issues as simple as possible, the facts and the relationships among the parties will be summarized.

Boyne is the successor corporation to Big Sky of Montana, Inc., the entity which began development of the Big Sky ski resort, golf course and residential real estate near the ski area. For purposes of this appeal, all activities of Big Sky of Montana, Inc., prior to the takeover of the project by Boyne will be regarded as having been undertaken by Boyne. Westland is the creation of individual owners of land adjacent to the Big Sky resort for the purposes of developing that property. The contract at issue was signed by the individual landowners, but was for the benefit of Westland, and will therefore be treated as a contract between Boyne and Westland.

Big Sky is located in the mountains along the West Fork of the West Gallatin River. Due to the resort's rural location, plans called for the building of a sewage treatment plant to serve the ski area, condominiums and other residential units associated with the resort. The best location for this plant was a site on Westland property. Boyne and Westland entered into a contract in 1971 whereby Westland conveyed approximately 21 acres of land to Boyne in exchange for the right to use the sewage facility. The contract reads in relevant part as follows:

> 3. In consideration for the granting of this tract of land by the Grantors to Big Sky, Big Sky in turn agrees to allow the Grantors to connect with its sewer plant for the subsequent development of the adjacent lands of the Grantor [sic] with no charge to the Grantors by Big Sky for such connection and

3

to further provide free sewage service as more particularly set forth below.

4. Accordingly, simultaneously upon the execution of this agreement by all parties and as reciprocal consideration, the Grantors agree to convey by Warranty Deed, accompanied by evidence of unencumbered merchantable title through a memorandum of title, the legal title to the property described in Exhibit "A". Big Sky in turn conveys to the Grantors upon the execution of this Agreement the right to connect to the sewer lines of Big Sky in order that the Grantors can utilize the said central tertiary sewer plant to be constructed by Big Sky and Big Sky further agrees to provide to the Grantors sewage treatment at no charge for up to one million gallons per year for twenty (20) years from and after the date use of Big Sky's sewer system is commenced by the Grantors or by July 1, 1981, whichever is the sooner. Any useage [sic] by the Grantors over the said figure of one million gallons of sewage per year would be assessed against the Grantors at the same rate charged to other users of the plant. Big Sky reserves the right to refuse service to any user who is a successor of the Grantors who refuses to join any rural improvement district which may hereafter be created to own, operate and maintain the said sewer plant. After twenty (20) years from the date use commences by the Grantors under this agreement or July 1, 1981, whichever is the sooner, subsequent use by the Grantors of the sewer plant shall be subject to charge at the same rate charged for all other users.

After this contract was signed, the plant was built and development of Big Sky proceeded. Several projects were connected to the treatment facility. Westland did not begin plans for development of its property until approximately 1982. An initial study drawn up by a consulting firm hired by Westland called for a hotel, golf course, condominiums and other recreational facilities. The calculated "population equivalency" of the development was 3,700, which would require treatment of 43 million gallons of sewage annually.

4

Westland's study indicated that Boyne's treatment facility did not have sufficient capacity remaining to accommodate this much sewage.

The study results were submitted to defendant Rural Improvement District #305 (a quasi-public entity created at Boyne's request to operate the treatment plant), along with the suggestion that steps be taken to expand the plant's capacity. The District consented to accept the amount of sewage forecast by the plan, subject to certain conditions: "peak flow" from Westland's development would be limited, eight more acres of Westland property would be conveyed to the District for expansion of the plant, and Westland would allow disposal of treated waste water on its property (by irrigating the proposed golf course).

Westland disagreed with Boyne as to its rights under the contract, which eventually resulted in Westland filing suit. Westland's complaint contained three alternative prayers for relief. The first sought an injunction against Boyne and the District prohibiting further connections to the treatment plant until Boyne could show that it had the capacity to satisfy the needs of Westland's planned development, and a declaration of the parties' rights under the contract. The second alternative prayer sought rescission of the contract and return of the land to Westland. The third alternative prayer sought money damages for breach of contract.

After trial by the District Court sitting without a jury, the court issued its judgment on August 19, 1985. The court ruled: (1) the contract between Boyne and Westland was a valid and enforceable agreement; (2) Westland was entitled to use the facility for treatment of 43 million gallons of sewage per year as projected by its plan; (3) neither Westland nor its land could be assessed for the costs of improvements to or enlargement of the treatment facility

necessary to accommodate Westland's use; (4) Westland was entitled to treatment of its first one million gallons of sewage per year without charge for the remainder of the 20-year period from July 1, 1981, to June 30, 2001; (5) Boyne and the District were enjoined from allowing any further connections to the treatment facility until projects were completed to expand the capacity of the facility to accommodate Westland's projected sewage; (6) if Boyne determined that it would be impossible to complete any necessary expansion, Westland would be entitled to full rescission of the contract and return of the land in question; and (7) Westland was entitled to costs and disbursements.

Boyne moved for a stay of execution of the judgment pending an appeal to this Court, and the parties filed a Stipulation for Stay of Execution on September 30, 1985. The Stipulation stated terms for the stay agreed to by both sides. Most importantly, both parties agreed that paragraph two of the court's judgment was valid and not subject to appeal. That paragraph reads:

> 2. That by virtue of said agreement, Plaintiffs are entitled to the use of the storage capacity of the existing sewage facility and the next addition to the facility in an amount of 43 million gallons of sewage per year which, using a 60-gallon per person per day figure, would allocate a population equivalency of 3,700 for the development of the Plaintiffs' lands.

The court then entered an order conforming to the terms of the Stipulation.

Boyne brought its appeal to this Court, in the course of which a factual dispute arose between the parties as to what action was required of Boyne under the District Court's judgment. We refused to hear the appeal due to the existence of the factual dispute, and remanded the case to the District

6

Court.  After a second trial, the District Court entered its order finding that Boyne had not "completed any projects which have expanded the capacity of the sewer treatment facilities"  and therefore had not satisfied the court's August, 1985, judgment.  This appeal followed.

While Boyne raises six issues on appeal, its arguments to this Court center on two portions of the District Court's judgment: the quantification of rights in paragraph 2 of the judgment and the injunction requiring Boyne to expand the capacity of the treatment plant to accommodate Westland's entitled use.  There have been no serious arguments advanced concerning the court's other holdings, which basically are corollary to these two main components.

As to the quantification of Westland's right of use, the Stipulation for Stay of Execution controls.  It is improper to raise an issue on appeal as to a question of law or fact after the parties have stipulated to that law or fact.  In re Marriage of Prevost (Mont. 1987), 731 P.2d 344, 44 St.Rep. 84.  The language of the Stipulation states that paragraph 2 of the court's judgment is not subject to appeal.  The arguments put forth by both parties alleging withdrawal from the stipulation by their opponent are unconvincing.  We therefore decline to address Boyne's issues as they relate to the quantification of rights found in that paragraph. Westland has the judicially determined right to utilize the treatment facility to the extent of 43 million gallons of sewage per year.  That right will be res judicata in any future dispute between these parties.

Boyne's second challenge raises a novel issue.  Injunctions are rarely used to enforce contract rights or prevent breaches, and applicable court decisions concerning the propriety of this tactic are scarce.  However, the legislature has set forth statutory guidelines for the use of

injunctions. An applicable guideline is found at §
27-19-103(5), MCA. Under this section, an injunction cannot
be obtained "to prevent the breach of a contract the
performance of which would not be specifically enforced." A
list of "obligations which cannot be specifically enforced"
is found at § 27-1-412, MCA. At subsection (5), that list
includes "an agreement the terms of which are not
sufficiently certain to make the precise act which is to be
done clearly ascertainable."

In this case, Westland has alleged that its rights under
the contract are not clear. Westland sought and obtained a
quantification of its entitlement to use the treatment plant
from the District Court. However, if Westland's rights under
the contract are unclear, then Boyne's corresponding duties
are equally unclear. Those duties have not been clarified in
this action. Both parties admit that bargaining terms such
as the amount of land required for the treatment plant and
the scope of future developments were necessarily based on
estimates and assumptions used by the engineers involved in
designing the plant. During this action, both parties have
hired engineering firms to produce reports concerning
questions such as the capacity of the facility as it
currently stands; how much of that capacity is in actual use;
how much will be used by developments currently being built;
and how much capacity, if any, must be added to the plant in
order to accommodate Westland's future needs. This evidence
conflicts. Engineers for each party disagree on the answers
to these questions and cast doubt upon the methods used to
arrive at the answers given in the other party's report.

The second trial in this case dealt with these ques-
tions, but failed to produce any real clarification. The
arguments using the engineering evidence were directed toward
Boyne's allegation that it had satisfied the court's prior

judgment by taking more accurate measurements of the plant's capacity and making certain repairs. The court held that Boyne had failed to satisfy the judgment because it had not "completed any projects which have expanded the capacity" (emphasis ours) of the facility. The precise acts to be carried out by Boyne cannot be ascertained from the contract itself or the record of this case. Nor have the parties argued on appeal that Boyne's obligation has been or should be quantified. Section 27-1-412(5), MCA, thus forbids specific enforcement of that obligation. The court's injunction requiring expansion of the plant to prevent a possible breach of contract by Boyne was improper.

By requiring that Boyne somehow build current capacity into the system for use that will not occur until some indefinite point in the future, the District Court appears to have sanctioned waste. There is evidence in the record to show that enlargements to the system constructed now could be useless (due to weed growth, rust, etc.) by the time Westland is ready to utilize it. Considering the embryonic status of Westland's development plans, it is also possible that the chemistry and the mechanics used to treat sewage at Big Sky will have changed when the time to connect to the sewer system arrives.

The right granted to Westland on the face of the contract is that of connecting to Boyne's sewer system. At Westland's request, the District Court looked to extrinsic evidence to quantify the amount of sewage Westland could place in the system. When Westland wishes to exercise its right to connect, Boyne and the District must comply or be in breach of the contract. Until that time, no breach of this contract will have occurred, and adjudication of this question will be premature. 4 Corbin on Contracts § 943 (1951); see § 27-2-102, MCA. How Westland's sewage will be

accommodated is a concern for Boyne and the District to address. It was not a proper subject for an injunction.

We have held that the District Court's quantification of rights was stipulated to by the parties, and is therefore binding. We have also held that the injunction was improperly granted. Given these holdings, we affirm those portions of the court's judgment upholding the validity of the contract, quantifying Westland's right to utilize the facility, forbidding assessment of Westland or its property for any costs of enlargement of the facility, affirming Westland's right to free treatment of sewage in the amount of 1 million gallons per year for a 20-year period prescribed in the contract, and granting Westland costs and disbursements of $519.25. We reverse that portion of the court's judgment enjoining Boyne from making further connections to the treatment facility until current capacity is built into the system for Westland's future use, and remand the case for the District Court to strike paragraphs 5 and 6 from its judgment.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

10