No. 02-462

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 228

ROBERT SPOKLIE and SPOKLIE ENTERPRISES, LLC,

       Plaintiffs and Respondents,

v.

MONTANA DEPARTMENT OF FISH, WILDLIFE & PARKS,

       Defendants and Appellants,

and

SPORTSMEN FOR I-143, MONTANA WILDLIFE FEDERATION,

       Defendant-Intervenors and Appellants.

FILED

OCT 1 0 2002

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fifteenth Judicial District,
In and for the County of Sheridan,
The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

              Hon. Mike McGrath, Attorney General; Chris D. Tweeten,
Chief Civil Counsel, Helena, Montana (Department of Fish, Wildlife & Parks)

              Jack R. Tuholske, Attorney at Law, Missoula, Montana (Montana Wildlife Federation)

              Elizabeth A. Brennan, Rossbach Brennan, P.C., Missoula, Montana (Montana Wildlife Federation)

       For Respondents:

              Loren J. O'Toole II, O'Toole & O'Toole, Plentywood, Montana

                          Submitted on Briefs: September 26, 2002

                                   Decided:  October 10, 2002

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1     The Plaintiffs, Robert Spoklie and Spoklie Enterprises, LLC, brought this action for a declaratory judgment against the Defendant, Montana Department of Fish, Wildlife & Parks, in the District Court for the Fifteenth Judicial District in Sheridan County, in an effort to enjoin FWP from enforcing its interpretation of Initiative 143's "fee shooting" provisions which are now found at § 87-4-414(2), MCA. The District Court issued a preliminary injunction which prohibits FWP from interfering with Spoklie's sales of alternative livestock (elk) to third persons, even if the third persons subsequently shoot the elk at Spoklie's facility. FWP and Defendant-Intervenors Sportsmen for I-143 and Montana Wildlife Federation (hereinafter "Sportsmen"), moved to dissolve the preliminary injunction. The District Court denied that motion. FWP and Sportsmen appeal from the order denying the motion to dissolve the preliminary injunction. We reverse the order of the District Court.

¶2     The issue on appeal is whether the District Court's preliminary injunction interferes with FWP's enforcement of § 87-4-414(2), MCA, and is therefore prohibited by § 27-19-103(4), MCA.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Plaintiff Robert Spoklie owns alternative livestock, including elk, located at Spoklie Elk Ranches in Sheridan County, and Spoklie Enterprises, LLC, in Flathead County. Spoklie is partial owner of both Spoklie Elk Ranches, which owns one alternative livestock license, and Spoklie Enterprises, which owns two licenses.

2

¶4 On November 7, 2000, voters passed I-143, which "prohibit[s] new game farms, prohibit[s] transfer of existing game farm licenses, and prohibit[s] shooting of game farm animals for a fee." The proponents of I-143 stated in the voter pamphlet that I-143 would "stop the unethical captive shooting of penned big game animals, also known as 'canned hunts.'" In addition, the proponents stated that further regulation of the game farm industry was necessary to reduce the health risks game farm livestock pose to other wildlife. I-143 had a November 7, 2000, effective date.

¶5 FWP drafted new policies and procedures reflecting the I-143 "fee shooting" amendments, and on December 28, 2000, FWP sent a letter to all alternative livestock licensees informing them of the new policies. Enclosed with that letter were copies of a letter stating FWP's "policy decisions for the shooting and transfer issues," and a letter setting forth FWP's legal analysis in support of the new policy decisions. The "policy decisions" letter was a December 15, 2000, letter from Patrick Graham, Director of FWP, to Duane Douglas, Chairman of the Alternative Livestock Advisory Council. The letter stated that, with the I-143 amendments in effect:

> Persons who acquire ownership in alternative livestock after November 7, 2000 are not permitted to dispatch their animals with a high-powered rifle, bow and arrow or crossbow. Only the licensee, principle [sic] manager or DVM (designated agent) is allowed to so dispatch alternative livestock that have had ownership transferred to persons other than an alternative livestock licensee after November 7, 2000.

The second letter was dated December 12, 2000, and was from Robert Lane, Chief Legal Counsel for FWP, to Pat Graham, Director of FWP. It set forth the following rationale:

3

The changes to 87-4-414(2) make it clear that a licensee is prohibited from permitting the shooting or harvesting of alternative livestock on a licensed facility when it is for a fee. It is the interpretation of the FWP legal unit that after the effective date of the initiative the electorate intended to remove from the list of lawful activities that a person other than the licensee could engage in on an alternative livestock facility, the right to shoot or harvest game or alternative livestock with a bow and arrow, cross-bow or high powered rifle for a fee. Because of the difficulty in being able to establish whether or not a particular shooting or harvesting was or was not for a fee the only practical means of enforcing the prohibition is to limit the shooting of animals on alternative livestock facilities to the license owner or principal manager. This is in keeping with the policy of the Department established prior to passage of I-143 that on an alternative livestock facility which was not licensed as a shooter facility that only the owner or principal manager was permitted to dispatch game or alternative livestock on that facility. The following scenario is provided to illustrate the scope of this interpretation. After the effective date of the initiative when a licensee sells an animal to a non-licensee whether or not there was any provision for 'boarding' the animal, part of the purchase price is presumed to be the use of the facility to shoot the animal. The game farm licensee cannot then allow the new owner to shoot the animal without violating the law. Therefore, restricting the killing of alternative livestock to the licensee or principal manager is a reasonable means of preventing a possible violation of 87-4-414(2). In this way the rights of the new owner are not impacted since the new owner of the animal can use the licensee or principal manager to dispatch the animal for them if they so desire. The only thing the new alternative livestock owner is losing is the experience of shooting, for a fee, the alternative livestock which is exactly the activity that persons other than an alternative livestock licensee can no longer engage in as a result of the initiative.

¶6 Spoklies filed a complaint in the District Court on September 28, 2001, in which they requested a temporary restraining order (TRO), a preliminary injunction, a permanent injunction, and declaratory judgment that FWP's new policies were not enforceable. Spoklies did not challenge the constitutionality of I-143; rather, Spoklies claimed that FWP's policy decisions incorrectly interpreted the I-143 "fee shooting" and license transfer

4

provisions. Spoklies alleged that FWP's erroneous interpretation of I-143 "prevents Plaintiffs from legally selling their livestock to a bona fide purchaser who may desire to dispatch his or her newly acquired property at Plaintiffs' ranches." Spoklies complaint, as amended, claimed that their business was compliant with the codification of I-143 at § 87-4-414(2), MCA, because they merely sold elk to third parties and that "[o]nce the new owner takes legal possession of the animal, he or she can choose to field slaughter the animal if he or she so desires at the ranches or arrange for the transport of the live animal off the premises," but that "once purchased, it is up to the buyer to arrange for the transportation of that animal from the ranch."

¶7 Spoklies further claimed that FWP's enforcement or threat to enforce its new policy would cause irreparable injury because they would lose at least 13 pending sales, estimated at $71,000; they would lose approximately 70% of the gross revenue from farming and ranching operations; and, they would default on their loans and lose their ranch properties.

¶8 The District Court granted a TRO on September 28, 2001, and sent notice to FWP. The TRO ordered FWP to "immediately cease, desist and restrain from initiating enforcement actions against Plaintiffs for selling their privately-owned alternative livestock to third parties who then seek to harvest their newly acquired property at Plaintiffs' facility and against the third parties who purchase the livestock . . . ." On October 4, 2001, FWP moved to dissolve the TRO, and on October 5, 2001, FWP appeared at the show cause hearing and contended

5

that § 27-19-103(4), MCA, prohibited enjoining enforcement of a statute for the public benefit.

¶9 On October 15, 2001, Sportsmen *moved to intervene in the proceedings. Spoklies* opposed that motion. On October 22, 2001, the District Court granted the preliminary injunction against FWP, continued the stay imposed by the TRO, and rejected FWP's motion to dissolve the TRO.

¶10 On November 8, 2001, Spoklies moved to amend its complaint and to certify the case as a class action. Spoklies later moved to request oral argument on this motion.

¶11 On November 27, 2001, the District Court denied Sportsmen's motion to intervene. We accepted supervisory control over the intervention issue, and permitted Sportsmen to intervene on February 19, 2002. That Opinion and Order is found at *Sportsmen For I-143 v. Fifteenth Jud. Court*, 2002 MT 18, 308 Mont. 189, 40 P.3d 400.

¶12 On June 5, 2002, Sportsmen and FWP filed a joint motion to dissolve the preliminary injunction, contending the injunction was wrongfully issued as a matter of law in violation of § 27-19-103(4), MCA.

¶13 On June 15, 2002, the District Court denied Spoklies' motion for oral argument for being untimely, granted Spoklies' motion for certifying a class action, and denied the joint motion to dissolve the preliminary injunction. The court concluded that the injunction did not enjoin FWP's enforcement of § 87-4-414, MCA, but that FWP's policy was inconsistent with the language of § 87-4-414(2), MCA.

6

¶14 FWP and Sportsmen appeal that part of the order that denied the joint motion to dissolve the preliminary injunction.

## STANDARD OF REVIEW

¶15 Generally, when reviewing a district court's order granting or denying an injunction, we apply an abuse of discretion standard. *Hagener v. Wallace*, 2002 MT 109, ¶ 12, 309 Mont. 473, ¶ 12, 47 P.3d 847, ¶ 12. However, where "the district court bases its decision to grant such relief upon its interpretation of a statute, no discretion is involved and we review the district court's conclusion of law to determine whether it is correct." *Hagener*, ¶ 12 (citing *M.H. v. Montana High School Ass'n* (1996), 280 Mont. 123, 130, 929 P.2d 239, 243).

¶16 Accordingly, we will review the District Court's conclusions of law and interpretation of § 87-4-414(2), MCA, for correctness. Where those conclusions are correct, "we will not interfere with the court's exercise of discretion unless there is a showing of manifest abuse of such discretion." *Mont. Tavern Ass'n v. State, Dept. of Revenue*, 224 Mont. 258, 263, 729 P.2d 1310, 1314 (citations omitted).

## ISSUE 1

¶17 Preliminarily we must decide whether to consider the argument Spoklies raise for the first time on appeal, that FWP and Sportsmen failed to comply with the affidavit and hearing requirements for a motion to dissolve a preliminary injunction?

¶18 Spoklies contend that the District Court should be affirmed because FWP and Sportsmen failed to support their motion to dissolve the preliminary injunction with an

7

affidavit as required by § 27-19-401, MCA, and that no hearing was held, as required by § 27-19-404, MCA. Sportsmen respond that Spoklies did not raise either of these issues in the District Court.

¶19 We will not consider issues that are raised for the first time on appeal. *In re Marriage of Binsfield* (1995), 269 Mont. 336, 344, 888 P.2d 889, 894. Spoklies did not raise the affidavit or hearing issues before the District Court. Therefore, we decline to consider them on appeal.

## DISCUSSION

¶20 The issue on appeal is whether the District Court's preliminary injunction interferes with FWP's enforcement of § 87-4-414(2), MCA, and is therefore prohibited by § 27-19-103(4), MCA.

¶21 The District Court concluded that the preliminary injunction did not interfere with the enforcement of § 87-4-414(2), MCA (as amended by I-143). The District Court gave the following explanation:

> 87-4-414 MCA bans the "...shooting of....alternative livestock....for a fee..." The Montana Fish, Wildlife, and Parks policy decision and interpretation of this statute goes far beyond the statutory language, saying, among other things, "Persons who acquire ownership in alternative livestock after November 7, 2000 are not permitted to dispatch their animals with a high powered rifle, bow and arrow, or crossbow." This interpretation interferes with the ordinary management of domesticated livestock and clearly goes far beyond the statutory prohibitions. If this interpretation were allowed to be used during the pendency of this action, the Plaintiffs would be irreparably harmed before the case was resolved . . . When the Intervenors were petitioning the Supreme Court, they themselves argued "a grant of a stay of further proceedings will not prejudice the plaintiffs since the District Court already enjoined the

8

enforcement of I-143". The Intervenors were wrong in their statement, in that the injunction did not restrict enforcement of I-143 and the related statutes, it restricted "...enforcement actions against Plaintiffs for selling their privately-owned alternative livestock to third parties who then seek to harvest their newly acquired property at Plaintiffs' facility and against third parties who purchase the livestock..." It is not a restriction to enforcement of Section 87-4-414 MCA and the prohibition of shooting alternative livestock for a fee.

¶22 On appeal, Spoklies contend that the District Court's reasoning is sound and that the injunction does not interfere with the execution of § 87-4-414(2), MCA. FWP and Sportsmen, however, contend that the District Court erred as a matter of law when it refused to dissolve the preliminary injunction in spite of § 27-19-103(4), MCA, which prohibits injunctions "to prevent the execution of a public statute by officers of the law for the public benefit . . . ." Sportsmen suggest that Spoklies' planned sales are schemes to sell a "canned hunting experience," and FWP made similar claims before the court during the October 5, 2001, show cause hearing. Accordingly, it is necessary that we consider the conduct at issue to consider whether it is prohibited by the language of § 87-4-414(2), MCA.

¶23 The District Court entered the following injunction in the TRO:

DEFENDANT IS HEREBY ORDERED to immediately cease, desist, and restrain from initiating enforcement actions against Plaintiffs for selling their privately-owned alternative livestock to third parties who then seek to harvest their newly acquired property at Plaintiff's facility and against the third parties who purchase the livestock . . . .

¶24 To determine whether the District Court's orders interfere with the enforcement of § 87-4-414(2), MCA, or other related statutes, we apply general rules of statutory construction. Section 1-2-101, MCA, provides that our duty "is simply to ascertain and

9

declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all." This Court will reject a construction of a statute that would leave any part of the statute without effect. *Montco v. Simonich* (1997), 285 Mont. 280, 287, 947 P.2d 1047, 1051 (citation omitted).

¶25 Section 87-4-414(2), MCA, with the I-143 amendment italicized, provides as follows:

> The licensee may acquire, breed, grow, keep, pursue, handle, harvest, use, sell, or dispose of the alternative livestock and their progeny in any quantity and at any time of year as long as the licensee complies with the requirements of this part, *except that the licensee may not allow the shooting of game animals or alternative livestock, as defined in 87-2-101 or 87-4-406, or of any exotic big game species for a fee or other remuneration on an alternative livestock facility.*

Absent statutory definitions, the plain meaning of the words used in the statute controls. *Thomas Bros. v. Cargill, Inc.* (1996), 276 Mont. 105, 110, 915 P.2d 226, 229. An alternative livestock "facility" is defined as "perimeter fences and other enclosures that provide for the confinement, handling, and quarantine of alternative livestock." Section 87-4-406(5), MCA. "Fee" is commonly understood as: "[a] fixed sum charged, as by an institution or by law for a privilege." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 669 (3d ed. 1996). "Remuneration" in this context is commonly understood as: "[s]omething, such as a payment, that remunerates." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1527. "Remunerate" is defined as: "To pay (a person) a suitable equivalent in return for

10

goods provided, services rendered, or losses incurred; recompense. 2. To compensate for; make payment for." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1527.

¶26 The language of § 87-4-414(2), MCA, as amended, provides a licensee with several clear options: he can sell his livestock; he can harvest (or shoot) his own livestock; or he can allow the livestock to be harvested by someone else--so long as it is not done on his premises for a fee.

¶27 Spoklies argue, and the District Court agreed, that they are not getting a fee for the right to shoot elk at their facility. However, that contention is belied by the fact that Spoklies have alleged irreparable harm if the animals cannot be harvested (shot) by their clients on their premises. If the only charge is for the value of the animal, then the right to shoot it is inconsequential. If the right to shoot the animal on Spoklies' property is inconsequential, then they cannot meet the necessary test for a preliminary injunction. *See* § 27-19-201(2), MCA.

¶28 From the facts alleged in Spoklies' complaint, it is difficult to understand how FWP's interpretation of § 87-4-414(2), MCA, would eliminate most or all of their sales *unless* the fee or other remuneration is related to the privilege to shoot the "newly-purchased livestock." If the Spoklies' average elk price, $5,462, merely represents the actual market value of the average elk, then FWP's interpretation of the "fee shooting" provisions should not cause Spoklies to lose any of their current purchasers. Assuming *arguendo* that Spoklies' elk price accurately reflected the true value of the elk and that it excluded the value of shooting the

11

elk, FWP's interpretation of § 87-4-414(2), MCA, "fee shooting" prohibition should have no impact on its elk sales whatsoever.

¶29 Therefore, we conclude that the activity at issue in this case does constitute the type of activity prohibited by § 87-4-414(2), MCA, as amended by I-143. Spoklies clearly consider the right of third persons to harvest elk at their facility an important part of the consideration they receive in exchange for the fees Spoklies are paid. That arrangement is exactly what is now prohibited by statute. Therefore, we conclude that the District Court's preliminary injunction does interfere with FWP's execution of § 87-4-414(2), MCA–a statute enacted for the public benefit.

¶30 We must next consider Spoklies' argument that the District Court may grant a preliminary injunction despite § 27-19-103(4), MCA, where a party demonstrates irreparable injury.

¶31 FWP and Sportsmen contend that our holding in *State ex rel. Freebourn v. Carroll* (1929), 85 Mont. 439, 279 P. 234, expressly precludes injunctions against public officials executing public statutes for the public welfare, unless there is a valid claim that the statute enforced was itself unconstitutional or invalid. FWP and Sportsmen do not challenge Spoklies' claim of irreparable harm but argue that injunctive relief would only be available if Spoklies claimed and sufficiently proved that § 87-4-414(2), MCA, as amended is unconstitutional or invalid. FWP and Sportsmen additionally note that there are several other cases pending in other forums, several of which do challenge the constitutionality of I-143

12

and § 87-17-414(2), MCA, as amended. FWP and Sportsmen conclude that *Freebourn* expressly controls this situation, and request that we overrule, distinguish, or dismiss as dicta language in *New Club Carlin v. City of Billings* (1989), 237 Mont. 194, 772 P.2d 303, to the extent that it suggests that a district court may enjoin the execution of a public statute where the plaintiff demonstrates irreparable injury.

¶32 In *New Club Carlin*, the plaintiff, a bar operator, sought a preliminary injunction against the City of Billings and its police chief after police arrested several employees of the bar for nude dancing or permitting nude dancing in the bar. The District Court denied the bar's motion for a preliminary injunction. On appeal we acknowledged § 27-19-103(4), MCA, but also noted two circumstances in which injunctions are permitted pursuant to § 27-19-201, MCA. We then stated that:

> To overcome the Montana statute § 27-19-103(4), MCA, and well-settled case law that an injunction cannot be granted to prevent the execution of a public statute for the public benefit, [the bar] must show irreparable injury or a violation of constitutional rights.

*New Club Carlin*, 237 Mont. at 196, 772 P.2d at 305 (citing *Freebourn*; 2 AmJur.2nd *Injunctions* § 243). After reviewing the bar's claims, we concluded that the bar did not have standing for its constitutional challenge to the statute and that the bar's monetary damages claim did not demonstrate irreparable injury, and affirmed the District Court. The language relied on by Spoklies was not necessary to those conclusions and was, at best, dicta. However, lest there be future confusion, we take this opportunity to point out that it was also partially incorrect.

13

¶33 Despite our citation to *Freebourn* for the cited language in *New Club Carlin*, *Freebourn* does not stand for the proposition that irreparable injury is sufficient to overcome § 27-19-103(4), MCA. In *Freebourn*, the plaintiff, a kennel club, sought to enjoin a county attorney from threatening to arrest the officers and agents of the club and seize the club's assets if they conducted races. The county attorney insisted that the races conducted at the club were in violation of Montana law, and that it was his duty to inform those persons of their violations of Montana law. The District Court entered a TRO against the county attorney, and on appeal we reversed that order. We recognized that a court of equity has no jurisdiction to enjoin criminal prosecutions. *Freebourn*, 85 Mont. at 443, 279 P. at 235. We adopted the general principle that:

> [A] court of equity has no jurisdiction in matters merely criminal or immoral. It leaves the correction of these matters to the criminal courts. The rule which prevents a court of chancery from interfering with the administration of the criminal laws of the state is a wise one, founded upon sound principles of public policy. Any other would result in much confusion and embarrassment, in preserving peace and order and enforcing the police power of the state generally.

*Freebourn*, 85 Mont. at 444, 279 P. at 235 (citing 10 Ruling Case Law 341, 342). We further determined that "whether the manner in which the club is conducting its business constitutes a criminal offense is a question to be determined by the court sitting as a court of law in a criminal case, and not as a court of equity." *Freebourn*, 85 Mont. at 444, 279 P. at 235 (citations omitted). We quoted *Shuman v. Gilbert* (Mass. 1918), 118 N.E. 254, 257, as follows:

14

"Simply that one is in business, and may be injured in respect of his business by prosecution for an alleged crime, is no sufficient reason for asking a court of equity to ascertain in advance whether the business as conducted is in violation of a penal statute."

*Freebourn*, 85 Mont. at 444-45, 279 P. at 235.

¶34 In *Freebourn*, we did recognize an exception to the general rule, however, it did not involve an "irreparable harm." We stated:

The courts recognize an exception to the general rule when property rights are invaded by the threatened prosecution under a void statute. Hence equitable jurisdiction exists to restrain criminal prosecutions under unconstitutional or invalid statutes when necessary to safeguard property rights.

*Freebourn*, 85 Mont. at 444, 279 P. at 235 (citing 32 C.J. 243, 279-280 (1923)). When we construed *Freebourn* in *New Club Carlin* to include irreparable harm as an exception to the statute, we ignored our previous citation in *Freebourn* to 32 C.J. 279-280 which also states, in part:

The general rule is that an injunction will not be granted to stay criminal or quasi criminal proceedings, whether the prosecution is for the violation of the common law or the infraction of statutes or municipal ordinances, nor to stay the enforcement of orders of a state commission. If the statute on which the prosecution is based is valid, the fact that the enforcement thereof would materially injure complainant's business or property constitutes no ground for equitable interference. *It is only where the statute or ordinance is unconstitutional or otherwise invalid and where in the attempt to enforce it there is a direct invasion of property rights resulting in irreparable injury that an injunction will issue to restrain the enforcement thereof. Both of these elements are indispensable . . . .*

15

32 C.J. 279-280 (emphasis added). In *Freebourn*, we did not conclude that any statutory exceptions exist. We merely acknowledged a court-recognized exception to § 27-19-103(4), MCA.

¶35 Since Spoklies have neither alleged nor demonstrated that I-143 or § 87-4-414(2), MCA, as amended is unconstitutional, we conclude that the District Court erred, as a matter of law, when it enjoined FWP's execution of § 87-4-414(2), MCA. We reverse the District Court's order that denied FWP's and Sportsmen's motion to dissolve the preliminary injunction, and remand for further proceedings consistent with this Opinion.

_____
/Justice

We Concur:

_____

_____

_____

_____
Justices

16