No. 02-773

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 165

REIER BROADCASTING COMPANY, INC.,

Plaintiff and Appellant,

v.

MICHAEL KRAMER,

Defendant and Respondent,

and

MONTANA STATE UNIVERSITY,

Intervenor.

APPEAL FROM:     District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 2002-460,
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

John M. Kauffman, Kasting, Combs & Kauffman, P.C., Bozeman, Montana

For Respondent:

Thomas Roberts, Roberts & Mahoney, Spokane, Washington

Leslie C. Taylor, Montana State University, Bozeman, Montana
(Intervenor)

Submitted on Briefs: February 20, 2003
Decided: June 13, 2003

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Reier Broadcasting Company, Inc., appeals from the order of the Eighteenth Judicial District Court, Gallatin County, denying Reier's motion for relief from judgment. We affirm.

¶2     The following issue is raised on appeal:

¶3     Whether the District Court correctly concluded that Reier Broadcasting was not entitled to injunctive relief to prevent a breach of its employment agreement with Michael Kramer.

FACTUAL AND PROCEDURAL BACKGROUND

¶4     Appellant, Reier Broadcasting Company, Inc., owns several radio stations in Gallatin County and, until 2002, had exclusive rights to broadcast Montana State University athletic events. Respondent, Michael Kramer, is the head football coach at MSU. In January 2001, Reier Broadcasting and Kramer entered into an employment contract at the behest of MSU, whereby Reier agreed to pay Kramer $10,020 per year in exchange for exclusive broadcast rights with Kramer. Pursuant to the contract, Reier agreed to employ Kramer as an announcer and talent on the weekly, one-hour "Cat Chat" program, which airs during the MSU football season. In addition, Kramer agreed to record commercials for several of Reier's advertisers. The agreement remains in force and effect until November 2004. Section Two of the contract contains an exclusivity clause that provides the following:

> That Coach shall diligently and faithfully serve Station in such capacity, shall devote his entire skill and energies to such service, and shall not perform on or permit his name to be used in connection with any other radio or television station or program, or to accept any other engagement which will

2

conflict with his performance or effectiveness for Station, without prior approval and consent in writing by the Station.

¶5 Reier Broadcasting had earlier purchased exclusive broadcast rights to all MSU athletic events. These rights expired in the summer of 2002, at which time MSU began seeking competitive bids from other broadcasting companies. After reviewing MSU's Request for Proposal, under which these bids were to be obtained, Reier notified the university that there was a potential conflict between the Request for Proposal and Reier's contract with Kramer. According to Reier, the Request for Proposal required the successful offeror to broadcast interviews and conduct a commentary program with Kramer in violation of Section Two of the Reier-Kramer employment agreement, under which Kramer was contractually prohibited from announcing, or otherwise providing talent for Reier's competitors.

¶6 MSU declined to amend the Request for Proposal to address this conflict. MSU then disqualified Reier Broadcasting as a potential bidder, and awarded broadcast rights to the university's athletic events to Clear Channel Communications. MSU also notified Kramer that he was expected to provide interviews to Clear Channel despite the exclusivity clause contained in his contract with Reier.

¶7 Reier Broadcasting subsequently filed a Complaint and Application for Temporary Restraining Order with the Eighteenth Judicial District Court in an effort to protect its rights under the employment agreement, and to prevent Kramer from providing services to Clear Channel. The District Court granted the request for a TRO, pending an evidentiary hearing on the matter. In August 2002, the court held an evidentiary hearing on the question of

3

whether or not to convert the TRO into a preliminary injunction. The TRO was later amended to allow Kramer to "engage in audio, video or printed media obligations in connection with his coaching job . . . ."

¶8 After hearing testimony and reviewing the parties' pleadings, the court concluded that § 27-19-103(5), MCA, prohibited the issuance of an injunction under the circumstances. The court also dissolved the TRO. Reier Broadcasting moved to alter or amend the court's judgment. The court denied the motion, and Reier appealed.

STANDARD OF REVIEW

¶9 Generally, when reviewing a trial court's grant or denial of an injunction, our standard of review is for abuse of discretion. *Spoklie v. Montana Dep't of Fish, Wildlife & Parks*, 2002 MT 228, ¶ 15, 311 Mont. 427, ¶ 15, 56 P.3d 349, ¶ 15. However, when a trial court "'bases its decision to grant such relief upon its interpretation of a statute, no discretion is involved and we review the [ ] court's conclusion of law to determine whether it is correct.'" *Spoklie*, ¶ 15 (citing *Hagener v. Wallace*, 2002 MT 109, ¶ 12, 309 Mont. 473, ¶ 12, 47 P.3d 847, ¶ 12). Accordingly, we review a trial court's statutory interpretations and the resulting conclusions of law for correctness. To the extent that the court's conclusions are correct, "'we will not interfere with the court's exercise of discretion unless there is a showing of manifest abuse of discretion.'" *Spoklie*, ¶ 16 (citing *Montana Tavern Ass'n v. Dep't of Revenue* (1986), 224 Mont. 258, 263, 729 P.2d 1310, 1314).

4

DISCUSSION

¶10    This appeal concerns the scope and effect of § 27-19-103(5), MCA, which provides the following: "An injunction cannot be granted: . . . (5) to prevent the breach of a contract the performance of which would not be specifically enforced . . . ." The paramount issue raised by the appellant, Reier Broadcasting, is whether, within the context of a personal services contract such as the employment agreement between Reier and Kramer, the language of § 27-19-103(5), MCA, may be interpreted as prohibiting the use of injunctive relief to prevent one of the contracting parties (in this case, Kramer) from performing services elsewhere during the life of the contract.

¶11    Characterizing the Reier-Kramer employment agreement as a personal services contract and not subject to specific enforcement, the District Court concluded that the prohibition contained in § 27-19-103(5), MCA, precluded the issuance of the injunction sought by Reier. The court relied, in part, on § 27-1-412(1), MCA, which states that, "[t]he following obligations cannot be specifically enforced: (1) an obligation to render personal service . . . ." Combining this restriction with the language of § 27-19-103(5), MCA, the court concluded that it "may not enjoin one from doing something in violation of a contract if the [c]ourt cannot enforce the contract by specific performance . . . . The [a]greement between Kramer and [Reier] is a personal services contract and cannot be enforced by specific performance." The court explained that it could not prevent Kramer from violating the terms of that contract without improperly enforcing the affirmative obligations of the Reier-Kramer agreement through indirect means.

5

¶12    Reier Broadcasting argues that neither § 27-1-412(1), MCA, nor § 27-19-103(5), MCA, applies in the present case. Reier contends that by seeking an injunction, the company did not intend to require Kramer to render personal services, but rather to prevent Kramer from providing the same services to Clear Channel. Accordingly, Reier asserts that § 27-1-412(1), MCA, and its prohibition against the specific enforcement of personal services contracts, has no bearing on the present case, and thus § 27-19-103(5), MCA, is equally irrelevant.

¶13    Reier characterizes its request for an injunction as an attempt to enforce a negative covenant which, according to Reier, is appropriate given that Kramer's services are special or unique. According to Reier, contracts based on special or unique personal services, or in which a person holds a unique position, may be indirectly enforced by restraining the person from providing services to another. In support of this, Reier cites Volume 71, Section 165 of the American Jurisprudence, Second Edition, which states the following:

> Contracts calling for personal services or acts of a special, unique, or extraordinary character, or by persons in eminence in their profession or calling who possess special and extraordinary qualifications, may be indirectly enforced by restraining the person employed from rendering services to another . . . .

71 Am.Jur.2d Specific Performance § 165, 213 (1973).

¶14    Reier also cites a 1972 decision, *Nassau Sports v. Peters* (E.D.N.Y. 1972), 352 F.Supp. 870, 875 (citations omitted), in which the federal district court for the eastern district of New York noted that "it has long been settled that injunctive relief may be granted to restrain an employee's violation of negative covenants in a personal services contract . . . ."

6

On this basis, Reier concludes that although Kramer should not be forced to fulfill his contractual obligations to the company, he nonetheless may be prevented from providing his unique services to Reier's competitors until the employment agreement expires in 2004.

¶15    We discussed the proper application of § 27-19-103(5), MCA, in *Westland Enterprises, Inc. v. Boyne, USA, Inc.* (1989), 237 Mont. 186, 772 P.2d 309. Although we held that an injunction against the defendant was improperly issued for reasons not associated with § 27-19-103(5), MCA, we set forth the rationale for the statute, and articulated the circumstances under which it would apply. We stated the following:

> Injunctions are rarely used to enforce contract rights or prevent breaches, and applicable court decisions concerning the propriety of this tactic are scarce. However, the legislature has set forth statutory guidelines for the use of injunctions. An applicable guideline is found at § 27-19-103(5), MCA. Under this section, an injunction cannot be obtained "to prevent the breach of a contract the performance of which would not be specifically enforced." A list of "obligations which cannot be specifically enforced" is found at § 27-1-412, MCA.

*Westland Enterprises*, 237 Mont. at 191, 772 P.2d at 312.

¶16    Reier appears to accept this general premise from *Westland* that § 27-1-412(1), MCA, identifies those contracts that cannot be specifically enforced, and that § 27-19-103(5), MCA, prohibits the use of injunctive relief to enforce the affirmative covenants contained in such agreements. That said, the point of contention, here, is whether these statutory prohibitions also apply to the enforcement of negative covenants, such as the exclusivity clause contained in the Reier-Kramer employment agreement. Given the absence of any relevant Montana case law, we turn to the California and Arizona courts, which have

7

interpreted statutes similar to § 27-19-103(5), MCA, to prevent the enforcement of negative covenants in personal services contracts.

¶17    In *Anderson v. Neal Institutes Co.* (1918), 37 Cal.App. 174, 173 P. 779, the California Court of Appeals construed an early version of § 3423 of the California Civil Code, which provided that "[a]n injunction may not be granted . . . to prevent the breach of a contract the performance of which would not be specifically enforced . . . ." In *Anderson*, the court of appeals identified two conflicting lines of authority under which § 3423 could have been construed at the time. The first suggested that although a court cannot specifically enforce an affirmative agreement by compelling one party to perform, the court can enjoin a party from breaching a negative covenant and performing elsewhere. *Anderson*, 37 Cal.App. at 177, 173 P. at 780. The second line of authority suggested that since a court cannot enforce the positive part of a personal services contract, it cannot restrain by injunction the negative part. 37 Cal.App. at178, 173 P. at 780. The court of appeals adopted the later rationale, concluding that in light of the unambiguous language of § 3423, a court cannot "interfere by injunction to prevent the violation of an agreement of which, from the nature of the [contract], there could be no decree of specific enforcement." 37 Cal.App. at 178-79, 173 P. at 781.[1]

---

[1]Immediately following *Anderson*, the California Legislature modified § 3423 to allow for the use of injunctive relief to enforce a negative covenant where the promised service is of a unique character the loss of which cannot be adequately compensated in damages. In its current form, the statute states, "[a]n injunction may not be granted . . . to prevent the breach of a contract the performance of which would not be specifically enforced . . . other than a contract in writing for the rendition of personal services . . . where the promised service is of a special, unique, [or] unusual . . . character, which

8

¶18 The Arizona Supreme Court followed *Anderson* in *Titus v. Superior Court, Maricopa County* (1962), 91 Ariz. 18, 368 P.2d 874. The court reasoned that § 12-1802(5) of the Arizona Revised Statutes, like § 3423 in California, was intended "to deprive the court of jurisdiction to enjoin breaches of covenants not to compete during the original term of the contract (where enforcement would indirectly enforce the promise to render services)." *Titus*, 91 Ariz. at 23, 368 P.2d at 878. The court noted that the purpose of this rule is to prevent parties from "seeking injunctive relief to force the course of affirmative action." *Titus*, 91 Ariz. at 21, 368 P.2d at 876.

¶19 We determine that § 27-19-103(5), MCA, like its California and Arizona counterparts, prohibits the use of injunctive relief to prevent a party to a personal services contract from performing services elsewhere during the life of the contract. The exclusivity clause in the Reier-Kramer employment agreement, if enforced vis a vis an injunction, would prevent Kramer from performing for Clear Channel or any of Reier's other competitors until the summer of 2004 when the Reier-Kramer agreement expires. Thus, if Kramer were to perform at all, he would have to perform for Reier. In that sense, an injunction would amount to the indirect enforcement of the affirmative part of the contract. It was this sort of

gives it peculiar value . . . ." Construing this new version of the statute in *Motown Record Corp. v. Brockert* (1984), 160 Cal.App.3d 123, 138, 207 Cal.Rptr. 574, 584, the California Court of Appeals stated that for reasons of public policy, a negative covenant (an exclusivity clause in that case), can be enforced by injunction when the contract is with a performer of requisite distinction as measured by the compensation the employer is willing to pay. Although *Motown* establishes the appropriate application of § 3423 in its current form, that case is of no consequence here given that § 27-19-103(5), MCA, is identical to the earlier version of § 3423.

indirect enforcement that the California court sought to avoid in *Anderson*, stating that "to enjoin one from doing something in violation of his contract is an indirect mode of enforcing the. . .contract." *Anderson*, 37 Cal.App. at 178, 173 P. at 780.

¶20 Following the lead of California and Arizona, we conclude that the issuance of an injunction, preventing Kramer from working for Clear Channel during the period remaining on his contract with Reier, would result in the indirect specific enforcement of the Reier-Kramer employment agreement. Contrary to the dissent's characterization, we do not hold that the underlying contract was invalid. The issue presented is not whether the contract is valid, but rather, whether the contract can be specifically enforced by means of an injunction. We conclude that pursuant to the explicit language of § 27-19-103(5), MCA, Montana courts may not enjoin the violation of a contract, the specific enforcement of which is barred by Montana law. The issue of whether Reier has other legal remedies for the alleged breach of contract is not before the Court.

CONCLUSION

¶21 In summary, we hold that § 27-19-103(5), MCA, prohibits the use of injunctive relief to enforce negative covenants contained in personal services contracts. Accordingly, the District Court correctly concluded that Reier Broadcasting was not entitled to enjoin Kramer from performing services elsewhere during the life of the contract.

/S/ W. WILLIAM LEAPHART

We concur:

10

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER

Justice Patricia O. Cotter dissents.

¶22    I dissent.  As requested by RBC, I would reverse the District Court's order dissolving the TRO and remand this case for a determination of whether or not a preliminary injunction should issue to prevent Kramer from providing his services to others in violation of the agreement between Kramer and RBC.

¶23    I would conclude that the enforcement of the negative covenant in the contract between RBC and Kramer would not run afoul of § 27-19-103(5), MCA.  The court properly recognizes that the exclusivity clause in the agreement, if enforced by way of an injunction, would prevent Kramer from performing for Clear Channel or any of Reier's other competitors until the summer of 2004 when the Reier-Kramer agreement expires.  I disagree, however, with the ensuing conclusion the Court reaches, which is that an injunction would amount to the indirect enforcement of the affirmative part of the contract because, if Kramer were to perform at all, he would have to perform for Reier.  I respectfully submit that this is a stretch.  RBC is not seeking to compel Kramer to perform under the contract.  It is simply seeking to prevent him from violating the non-competition provisions of the contract--provisions which were specifically bargained for by Kramer, at the encouragement and behest of MSU.

¶24    In addition, I find the position taken by MSU in this litigation offensive.  As the majority notes, RBC and Kramer entered into an employment contract "at the behest of

12

MSU." RBC alleges, and MSU does not deny, that representatives of MSU approached RBC for purposes of securing additional compensation for Kramer, after Kramer had been hired by MSU. An agreement was reached whereby Kramer would receive $10,200 from RBC, and in exchange would broadcast with RBC and no one else. MSU actively sought this benefit for Kramer and approved of the terms of the contract. A little more than a year later, MSU decided to award the exclusive rights to broadcast its athletic events to RBC's competitor, Clear Channel Communications. It was only at this point--when the deal between RBC and Kramer ceased serving MSU's interests--that MSU began to cry foul, claiming that the contract which it solicited in the first place, should be declared unenforceable. Laid bare, theirs is an argument born of convenience, not virtue.

¶25 RBC has fully and in good faith performed its obligations under its contract with Kramer, and for the first year, MSU and Kramer both accepted the benefits of the contract as well. Now, they want this Court to assist them in their breach. Many years ago this Court recognized that "[a] party who has secured to himself the benefits of a contract, and has accepted and used these benefits, has estopped himself in the courts from denying the validity or binding force of the instrument, or from setting up or asserting the contrary." *Brundy v. Canby* (1915), 50 Mont. 454, 148 P. 315 (citations omitted). Numerous other courts have embraced this same legal premise: Once a contract is performed and a party has received the benefits of it, that party is estopped from claiming invalidity in order to avoid the contract's burdens. See *Seay v. Dodge* (N.D. Ill. 1998), 1998 U.S. Dist. LEXIS 12005;

13

1998 WL 460273; *Silling v. Erwin* (S.D.W.Va. 1995), 885 F.Supp. 881; *Smith v. Hornbuckle* (Ga. 1977), 232 S.E.2d 149.

¶26    Although the resolution I favor as set out in ¶ 23 could stand alone, I would also conclude that MSU and Kramer were estopped from challenging the contract's enforceability.  For these reasons, I dissent.

/S/ PATRICIA COTTER


Justice Jim Rice concurs in the foregoing dissent.


/S/ JIM RICE